126   461
30a  218
30a  339
126   461
134   265
126   461
38a  574
38a  583
126   461
138   574
126   461
42a  246
126   461
149  454
150   58
126   461
52a  144
126   461
78a  573
126   461
180  317
126   461
85a  642
126   461
86a   68
126   461
186  ¹545
126   461
101a ²556
126   461
199  ¹564

THE HIDE AND LEATHER NATIONAL BANK OF CHICAGO *et al.*

*v.*

JACOB REHM, Assignee.

*Filed at Ottawa November 15, 1888.*

1. INSOLVENT DEBTORS—*preference among creditors—in anticipation of making an assignment.* After a debtor has determined to make an assignment of his property for the benefit of his creditors, all conveyances, transfers and other dispositions of his property or assets, made in view of his intended general assignment, whereby a preference is given, will be held to be within the prohibition of the statute, and void.

2. In this case, a debtor whose liabilities exceeded his assets about $50,000, who was, on January 13, 1887, indebted to a bank in the sum of $12,000, by three promissory notes, and to a leather company in the sum of $2876, evidenced by two notes, none of which notes were due, and was also indebted $1562 on another note maturing on that day, gave the holders of such notes judgment notes in lieu thereof, with warrants of attorney, authorizing the entry of judgment on such new notes. On the next morning, the debtor made a general assignment of all his property for the benefit of his creditors, but after the entry of judgments on the notes, and the issue of executions thereon, which were levied upon all the debtor's property. The evidence showed that at the time of the giving of the judgment notes, the debtor knew that he was insolvent, and intended making a general assignment: *Held,* that as the judgments were confessed for the purpose of preferring the plaintiffs therein, they were void, and that the holders of the judgments acquired no lien in preference of the creditors, generally.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. RICH & STONE, for the appellants.

Mr. H. H. ANDERSON, for the appellant Moll.

Messrs. KRAUS, MAYER & STEIN, for the appellee.

Messrs. BUTZ & ESCHENBURG, for the Pfister-Bogel Leather Company.

Mr. F. F. REED, and Messrs. WASHBURN, BOWMAN & ROUNTREE, for the Lycoming Rubber Company and the National Exchange Bank.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court affirming an order of the county court entered in the matter of the voluntary assignment of George W. Weber for the benefit of his creditors. It appears that Weber, after having carried on the business of manufacturing and dealing in boots and shoes for a considerable time, became greatly embarrassed and in fact insolvent, so that on the 13th day of January, 1887, his liabilities exceeded the value of his assets by about $50,000. On that day he was indebted to the Hide and Leather National Bank, for borrowed money, in the sum of $12,000, evidenced by three promissory notes, and to the Standard Leather Company, for merchandise, in the sum of $2876.14, evidenced by two promissory notes, none of said notes being then due. He was also indebted upon a note for $1562.86, maturing that day, given by him to Edward Moll, and which the latter had negotiated and upon which he was liable as indorser. In the afternoon of January 13, 1887, Weber executed and delivered to the Hide and Leather National Bank and to Charles F. Grey, president of the Standard Leather Company, in place of the notes they then held, judgment notes for the amounts of his indebtedness to said bank and to said company respectively, the warrants of attorney accompanying said notes being so drawn as to authorize the immediate entry of judgments thereon. He also at the same time executed and delivered a similar judgment note to Edward Moll for the amount of the note upon which the latter was liable as indorser, Moll on his part undertaking to pay the note. Judgments were immediately entered up on all of said judgment notes, and at about six o'clock in the afternoon of the same day, executions issued

thereon were levied upon all the property of Weber liable to execution.

The next morning Weber executed and delivered to Jacob Rehm, as his assignee, a general assignment of all his property for the benefit of his creditors, said assignment being delivered and recorded at about twenty-five minutes after nine o'clock in the morning of January 14, 1887. In pursuance of an agreement between the assignee and the execution creditors, an order was entered by the county court requiring the sheriff to turn over to the assignee all the property levied on by him by virtue of said executions, to be held by the assignee subject to any valid liens in favor of the execution creditors. This being done, said creditors filed their petition praying for an order requiring the assignee to pay their judgments. Certain unpreferred creditors of Weber also filed their petition alleging that said judgments, executions and levies constituted unlawful preferences within the meaning of the thirteenth section of the act in relation to voluntary assignments for the benefit of creditors, and praying that said levies and the liens thereby created be declared to be void.

Issues were formed upon said petitions by answers and replications, and a hearing being had on pleadings and proofs, the order brought up by this appeal was entered, finding, among other things, in substance, that at the time of the execution of said judgment notes, Weber was irretrievably insolvent and without hope of continuing in business; that he knew that his creditors were likely to take such steps as would at once take from him the control of his assets; that he knew that a crash was inevitable, and that if, in the scramble among creditors, he remained passive, the claims of certain of his creditors which he was desirous of preferring would be wholly or in part unpaid; that at the time of executing said judgment notes, he had determined to dispose of all his assets for the benefit of his creditors, but not equally; that he then and there intended to prefer some of them, and with a view to avoiding

the operation of the statute forbidding preferences he executed said judgment notes; that at the time of their execution, he had the intention of making an assignment of the residue of his property, over and above what was required to satisfy said preferences, so as to protect the same from attachments or other legal attacks, and to have the same distributed *pro rata* among his unpreferred creditors; that said judgment creditors, at the time they accepted said judgment notes, had knowledge of Weber's embarrassments, and were anxious for protection and preference, and took their judgment notes with the intention of enforcing them at once, knowing that such immediate action was indispensable in order to obtain the advantages which said notes were designed to give them. Said executions and levies were thereupon declared to be void in so far as they tended to establish a lien upon the property or funds in the hands of the assignee or to give a preference to said judgment creditors in the distribution of the assets of the insolvent. It was further ordered that the claims represented by said judgments, unless contested, should be allowed to share in the distribution of the assets of said insolvent on an equal footing with other claims legally proven and established.

The evidence bearing upon the facts found by the court, though somewhat conflicting, is, in our opinion, sufficient to sustain said finding. It would serve no useful purpose for us to discuss the evidence in detail. The judgment creditors rely mainly upon the testimony of Weber in which he claims that at the time of the execution of the judgment notes, he still entertained hopes of retrieving his affairs by means of financial aid from certain friends and correspondents from whom he was then expecting to hear, and that he did not arrive at a determination to make a general assignment until the morning of January 14. That he had no just ground for expecting such aid is abundantly shown, since it appears that at the time he executed the judgment notes he had in his hands definite information that no aid would come from any of the sources

from which he had been seeking it. The execution of judgment notes with warrants of attorney authorizing the immediate entry of judgments for nearly $15,000 of indebtedness not yet due was not the act of a man seeking or hoping to keep his business afloat. The same thing may be said of the payment of $1000 in cash in consideration of future legal services which he is shown to have made to his attorney at or just before the execution of the judgment notes. These and various other circumstances appearing in evidence which we need not notice in detail, warrant, if they do not necessitate the conclusion, that before the execution of the judgment notes, Weber had abandoned all hope of extricating himself from his financial embarrassments, or of continuing longer in business, and was busied solely with a consideration of the disposition to be made of his assets in view of the impending and inevitable catastrophe. So long as he is clearly shown to have entered upon the disposition of his property for the benefit of his creditors at the time he made the judgment notes, the law will indulge in no refinements in order to fix the precise point of time at which he reached the determination to make a general assignment. All that was done will rather be viewed as parts of the same transaction, so as to make it immaterial whether the determination to make the assignment in fact preceded or followed the execution of the judgment notes.

Since the decision of this court in *Preston* v. *Spaulding*, 120 Ill. 208, the law must be regarded as settled in this State that, after a debtor has made up his mind to make an assignment of his property for the benefit of his creditors, all conveyances, transfers and other dispositions of his property or assets, made in view of his intended general assignment, whereby a preference is given, will be held to be within the prohibition of the statute and void, the same as though incorporated in the deed of assignment itself. We are of the opinion that the evidence brings this case clearly within the rule thus established, and that the county court decided correctly in holding the liens

obtained by the judgment creditors by virtue of the levy of their executions to be unlawful preferences and therefore void. The judgment of the Appellate Court affirming the order of the county court will be affirmed. *Judgment affirmed.*