## Sweet, Dempster & Co.

### v.

## Philip Scherber, Assignee.

*Insolvency—Fraudulent Sale—Lien of Judgment Creditors—Assignment—Right of Vendor of Goods, Delivered by Mistake Prior to Time Fixed by Terms of Sale, to Reclaim from Assignee—Exemptions.*

1. Upon the case presented, this court holds that creditors of an insol-

vent debtor, claiming under judgments, and under a fraudulent sale, were neither of them entitled to priority but should stand on an equal footing with other creditors under a general assignment.

2. Executions issued on judgments taken upon judgment notes, *held* to have given the execution creditors no prior lien over other creditors, the notes having been secured under promise not to enter judgment thereon until the maturity of the notes, the creditors also knowing at the time of securing them that the debtor was insolvent.

3. Where a bill of goods was sold for future delivery, but by mistake of the vendors was shipped at once, but the vendee refused to receive them, except to store them at vendor's risk, and notified vendor to take them away, which vendor was intending to do when they passed into the assignee's hands, *held*, the goods not having been mingled with other goods of the insolvent, that the vendors were entitled to the proceeds of the sale of such goods from the assignee.

4. Costs were not properly chargeable against the proceeds arising from the sale of such goods, nor against the debtor's exemptions claimed by him in his deed of assignment.

[Opinion filed December 8, 1890.]

APPEAL from the County Court of Peoria County; the Hon. LAWRENCE W. JAMES, Judge, presiding.

Messrs. H. C. & M. A. FULLER, for appellants.

Messrs. WILLIAM S. KELLOGG, JAMES A. CAMERON, JOHN M. TENNERY and IRWIN & SLEMMONS, for People's Saving Bank, appellee.

Mr. JUDSON STARR, for Hunicke Bros., appellees.

Messrs. J. W. CULBERTSON and I. M. HORNBACKER, for assignor, Joseph F. Gebke.

C. B. SMITH, P. J.   On August 1, 1889, Joseph F. Gebke was a dealer in clothing and carried on two stores in the city of Peoria.   He became embarrassed and unable to meet his debts, and his creditors began to press him.   On the 1st of August, Wagg & Co. and Kingman et al. took judgments against him on judgment notes, and had immediate execution issued.   On the same day Gebke made a bill of sale of all his goods to Skinner Bros. and others of his creditors, and

one Philip Scherber was placed in possession under the bill of sale.

On the third day of August, 1889, Gebke executed and filed in the County Court of Peoria County a regular deed of assignment for the benefit of all his creditors to Philip Scherber, but in such deed he claimed his exemptions as the head of a family, and filed a schedule of assets and list of his creditors therewith. The County Court assumed jurisdiction and entered upon the administration of the estate. At the time of Gebke's failure he had numerous creditors whose debts amounted to largely more than his estate. It appears that at the time the bill of sale was made, great haste was made on the part of Gebke and the beneficiaries under that sale to get Mr. Scherber into possession of both stores before the judgment creditors could get executions in the hands of the sheriff, under their judgment. When Scherber was put in possession, he swears that he understood he was appointed as an assignee for the benefit of the creditors and did not then understand he was merely the agent under a bill of sale for the purchasers under that sale. Immediately after he took possession the bill of sale was recorded. The possession was taken and the bill of sale recorded about half an hour before the judgment creditors succeeded in getting executions under the judgment in the hands of the sheriff. These execution creditors now claim that this bill of sale was, as to them, fraudulent, and that the sale was made with a fraudulent intent on the part of all parties to it, to hinder and delay creditors.

The general assignment made on the 3d day of August for the benefit of his creditors amounted to a renunciation of the bill of sale made on the 1st day of August, so far as it was in the power of Gebke to renounce it. After the County Court took jurisdiction of the estate, all proceedings under the executions and bill of sale were suspended and by order of the court the rights of all parties under these proceedings preserved for future determination as their various rights and priorities might finally appear. The creditors came and proved their claims before the assignee.

Another branch of the case needs to be noticed in this con-

nection.   Hunicke Bros. (one of the appellees), through one of their traveling salesmen, made a sale of a bill of goods on July 9, 1889, to Gebke, amounting to $714, which was not to be shipped to him until September 15, 1889, as provided in the order taken at the time.   This order was sent to the house, and by some oversight the order was filled at once and shipped on July 12, 1889.   After this bill of goods had been received by Gebke, on July 27, 1889, he wrote to Hunicke Bros., informing them of the mistake, and refused to receive them, but informed the house he would hold them for them and at their risk; that he would not run any risk on them, and notified Hunicke Bros. that they had better take them out at once.   The salesman of Hunicke Bros. also swears to the mistake and says he was about to remove the goods when the store was closed.   The goods were all kept intact, and none of them sold by Gebke.   Gebke notified the assignee that these goods did not belong to him when he turned over the stock, and that they belonged to Hunicke Bros.   After the assignee took possession of these goods, Hunicke Bros. asked the court to turn over to them the goods, claiming them as their own property, but the court declined to do this but directed the assignee to keep them separate, so that the rights of Hunicke Bros. might be preserved on the final distribution of the assets.   The court then directed the assignee to sell the entire stock and all property of Gebke included in the assignment, but directed that the goods claimed by Hunicke Bros. should be sold separately and a separate account kept of the proceeds.   On a final hearing of the whole matter the court found:

1.   That the title to the goods claimed by Hunicke on August 1st was the property of Gebke and subject to the liens of the judgments entered that day, but that, by a new arrangement between Gebke and Hunicke, made on the 2d day of August, the title was re-invested in Hunicke and not subject to the later judgments taken by Kingman and others.

2.   That the bill of sale executed to Sweet, Dempster & Co. and others on the first day of August was void and was of no effect as against the liens of the judgment and execu-

tions of the first day of August, and that such bill of sale should be set aside.

3. That there is not sufficient funds to pay the prior liens and costs.

The court thereupon ordered the assignee to first pay the costs, and that the assignee should be allowed $200 for his services, and that each of the several sums ordered paid should be at its *pro rata* share of such expenses.

2. That he pay Gebke $386.60, less his share of the costs due him on his exemptions.

3. That he pay the taxes, $26.88.

4. That he pay the judgment of N. H. Wagg & Co.

5. That he pay the judgment of Kingman & Co. received on August 1, 1889.

6. That he pay Hunicke Bros. $452.68, the proceeds of the sale of property claimed by them.

7. The proceeds of the sale of personal property and real estate shall be applied in satisfaction of Kingman's judgment.

8. Balance if any remaining, shall be applied in satisfaction of general creditors.

From these findings and orders of the court, Sweet, Dempster & Co. appeal to this court, and the correctness of the orders of the court are challenged. We shall not attempt to go through this tangled skein of evidence and conflicting claims of the various creditors and claimants to this property and discuss their various rights in detail, but shall content ourselves with very briefly stating our conclusions from a careful examination of the record.

*First.* We think the bill of sale executed by Gebke to Sweet, Dempster & Co. and others was fraudulent, and an attempt both on the part of Gebke and the purchasers to get an undue advantage and preference on other creditors, all of them then well knowing that Gebke was insolvent, and intending to prefer some of his creditors to the detriment of others.

*Second.* We think for two reasons the judgments and executions taken by Wagg & Co. are not entitled to priority:

*first,* because the judgments were entered upon judgment notes, procured under a promise not to take judgment until their maturity, and that under such promise the plaintiff attempted to gain an advantage of the other creditors, then knowing Gebke was insolvent and unable to pay his debts; and *second,* because the executions under that judgment did not get into the hands of the sheriff until after the pretended bill of sale was filed for record.

The filing of the fraudulent bill of sale was notice to Wagg & Co. as well as other creditors, that Gebke was attempting to dispose of all of his estate or goods, in fraud of the rights of at least some of his creditors, and after that notice they could get no priority over each other by levying the executions. But they had also actual notice from the fact that the assignee under that bill was then in possession of the goods, holding them as he then supposed for the benefit of all the creditors. Hide and Leather Nat. Bank. v. Rehm, 126 Ill. 461; Hanford Oil Co. v. First Nat. Bank, 126 Ill. 584; Preston v. Spalding, 120 Ill. 208. If it should be conceded that the recording of the bill of sale was not constructive notice, and did not operate as a deed of assignment under the statute, still that avails the creditors nothing, because none of them had executions in the hands of the sheriff, and therefore no lien on them until Philip Scherber took possession of them. Inquiry of him by the creditors would have disclosed either that Gebke had put the goods in his hands as a general assignee for all his creditors, or that he held them under a fraudulent bill of sale entered into by the parties to it for the purpose of preferring some creditors above others, in view of his immediate insolvency and in violation of the statute.

We are therefore of opinion that the creditors of Gebke all started upon an equal footing, in the division of so much of his estate as shall remain after other preferred claims are disposed of and paid as hereinafter stated.

*Third.* We think the proof shows that the bill of goods shipped to Gebke by Hunicke Bros., on July 12, 1889, was shipped by mistake of Hunicke Bros., and they were not received and accepted by Gebke, nor mixed with his stock,

but barely held for the owners at their risk, and that the owners were so notified, and were intending to take charge of the goods when the assignee took possession of them under the general assignment made on August 3, 1890. Hunicke Bros. should therefore be paid the full proceeds of that bill of goods, and without any costs being chargeable against them or that fund.

*Fourth.* We think under the proof that Gebke was entitled to the full amount of his exemptions less $13.50, goods received by him, as claimed by him, and without any costs being taxed against such exemptions.

*Fifth.* The costs should be next paid, and then the taxes.

*Sixth.* Whatever remains of the estate shall be distributed among all other creditors without priority, in proportion to the amount of their respective claims.

The judgment will be reversed and remanded, and the court will proceed with the cause according to the directions herein contained.                    *Reversed and remanded.*