## Adam Ross and Addison F. Helms v. James H. Walker & Co., The Irwin Phillips Co. and Cook, Lyman & Seixas.

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*The Term Defined.* —A written deed of conveyance, executed by the assignor, as party of the first part, to the assignee, as party of the second part, reciting the grantor's indebtedness and inability to pay, and conveying his property, real and personal, by apt words of sale and transfer, to the assignee, in trust, to take possession of and sell the same, and to collect the outstanding debts, and out of the proceeds to pay the creditors.

2. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*Requisites of.*—There must be an absolute transfer of the whole interest of the assignor, legal and equitable, in the property assigned, in trust for the benefit of creditors; and hence an absolute conveyance made directly to the creditor in payment, or any form of lien so given as security for the payment of a *bona fide* debt, though having the effect to give him a preference, is not an assignment for the benefit of creditors within the meaning of the statute.

3. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*What Instruments in Connection Therewith Void.*—Where an instrument disposing of property has been held void under the act relating to assignments, etc., it has been upon the ground that, having been made in contemplation of an assignment, afterward actually executed, they were to be deemed a part of it.

4. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*What Transfers Are Not.*—A debtor, solvent or insolvent, notwithstanding the statute, may lawfully transfer any part or the whole of his property, absolutely, in payment, or incumber it by mortgage, deed of trust in the nature of a mortgage, judgment confessed or pledge, as security for the payment of any one or more of his debts.

5. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*Chattel Mortgages, When Not.*—A merchant in failing circumstances. executed two chattel mortgages upon his stock of goods to secure two of his creditors and assigned the books of accounts and notes to certain other creditors to secure them, thus disposing of all his property not exempt by law from execution; *it was held* that the transfer did not amount to an assignment for the benefit of creditors under the statute.

6. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*Right of a Debtor to Dispose of His Property, etc.*—Instruments transferring the property of a person in failing circumstances do not of themselves, even in effect, constitute an assignment. When not made in view of an actual assignment following, such transfers can not be regarded as a fraudulent evasion of the statute, because the debtor, though intending to appropriate all his

property to the payment of his debts, is not bound to make an assignment. In so appropriating it by absolute conveyances or mortgages directly to the creditors therein named, not creating a trust, he exercises a clear legal right, and may thus distribute it as he sees fit. His right by such means to prefer some creditors to others is not affected by the statute.

**Memorandum.**—Voluntary assignments. Appeal from an order of the County Court of Hancock County; the Hon. JOHN E. MILLER, County Judge, presiding. Heard in this court at the May term, 1893, and reversed. Opinion filed November 27, 1893.

The opinion states the case.

APPELLANT'S BRIEF, SHARP & BERRY BROS., ATTORNEYS.

It is not the form, but the effect of an instrument, which is to be considered in determining whether or not it is an assignment. Watson v. Bayley, 12 Pa. St. 164.

A lease has been held to constitute an assignment. Same authority.

A power of attorney. Lucas v. Sunbury & Erie R. R. Co., 32 Pa. St. 458.

A bond and mortgage. Owen v. Arvis, 26 N. J. Law, 22; First National Bank v. Knowles, 67 Wis. 373.

Chattel mortgages. Winner v. Hoyt, 66 Wis. 227.

A chattel mortgage and bill of sale. Burrows v. Heldorff, 8 Iowa 103; Vanpatten v. Burr, 52 Iowa 518.

Any form of instrument or instruments by which an insolvent debtor disposes of his entire property not exempt, or even substantially all, for the benefit of certain creditors, with preferences, is in legal effect an assignment for the benefit of all creditors. Friend v. Yagerman, 26 Fed. Rep. 814; Martin v. Houseman, 14 Fed. Rep. 160; Kelley v. Richardson, 21 Fed. Rep. 70; Tichmyer v. Baum, 43 Fed. Rep. 719.

J. W. MARSH and W. N. GROVER, attorneys for appellees.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was a petition to the County Court by appellees, creditors of appellant Ross, to have two chattel mortgages

given by him to certain other creditors therein respectively named, upon his stock of goods in store at Warsaw, declared to be a general assignment under the statute, and appellant Helms required to give bond, as assignee, to administer the property in accordance with the orders of the court.

Appellants answered severally, replications were filed and evidence heard. Whereupon appellant Ross moved the court to dismiss the case as to him, which was denied, and an order entered substantially according to the prayer of the petition, and a motion by each of the appellants for a rehearing overruled. They then took this appeal.

For quite a number of years prior, and until the 13th of August, 1892, appellant Ross was a dry goods merchant at Warsaw. Having become embarrassed and being pressed for payment and threatened with suits, on that day he went to Chicago to consult some business friends and creditors upon the situation stated, and upon their advice executed a chattel mortgage upon his entire stock to certain creditors therein named to secure an aggregate indebtedness due them of $8,145.13, setting forth the amount due to each respectively, and delivered it to Robert R. Baldwin, an attorney of the John V. Farwell Co., one of the mortgagees.

On the same day he made and signed a second mortgage upon the same stock to certain other creditors therein named, including the appellees, to secure an aggregate indebtedness to them of $3,495.79, setting forth the amount due to each, respectively, but did not deliver it until the 15th.

These instruments were in the usual form of chattel mortgages, with the usual defeasance clauses, and gave to the mortgagees power to sell at public or private sale, and for cash or on credit, as they should think best, and in addition thereto contained the following: " The said mortgagor hereby authorizes the sheriff of the said county of Hancock to execute the power of sale in this mortgage granted to the mortgagees or their assigns or legal representatives, and all other powers to them or either of them granted or given by this mortgage."

140     APPELLATE COURTS OF ILLINOIS.

VOL. 52.]          Ross v. James E. Walker & Co.

And the second was therein expressly declared to be subject to the first.

The following evening (August 14th) appellant Ross left Chicago on his return to Warsaw, accompanied by Mr. Baldwin, who had the first mortgage and was acting for and under the direction of the John V. Farwell Co., and had telegraphed to have appellant Helms, then sheriff of Hancock county, meet him there on his arrival.

They arrived shortly before noon of the 15th, and went to the store. After Ross had gone to his dinner, Baldwin obtained the keys from the clerks and took possession. He then turned them over to the sheriff with the mortgage, directing him to take care of the stock and to sell as provided in the mortgage, referring him to Mr. Grover, as the attorney of the company, if he should need any advice. When Ross, on his return, found the sheriff in possession, he acknowledged the second mortgage and delivered it to the magistrate for the mortgagees, to be recorded; and then assigned his notes and book accounts, which were of small value, to still other creditors—Mrs. Miller and Mrs. Geitz —to pay *bona fide* debts then due and owing from him to them.

Thus he disposed of all the property he had that was not exempt by law from execution.

On the 16th an expert from the house of the Farwell Company, assisted by Ross and his clerks, took an invoice of the goods mortgaged, making it amount to over $13,000, which exceeded the sum of his indebtedness.

Under the direction of the first mortgagees, the sheriff, on the 18th, duly advertised the stock for sale at public auction on the 29th, and in pursuance thereof sold it for $7,166.49, which he now holds subject to the decision of this case.

Both of the mortgages were dated August 15, 1892. The first was recorded on the 23d and the second on the 16th of said month.

It further appears that the Farwell Company acted solely for the first mortgagees; that Baldwin acted solely for the

Farwell Company; that neither had any interest in or connection with the second mortgage or the assignment of the notes and book accounts; that the sheriff acted for and under the direction of the first mortgagees; that when Ross left Chicago he did not know what Baldwin intended to do; but was informed by him before they arrived at Warsaw, that he supposed his stock would pay his indebtedness in full, and did not intend to make an assignment for the benefit of his creditors, under the statute, but did intend that in case of its deficiency the first mortgagees should be preferred.

There is no serious dispute as to what appellant Ross in fact did, and intended to do. His answer admits nearly all of the averments in the petition. The question is whether these acts and intentions amounted in legal effect to an assignment for the benefit of his creditors, within the meaning of Ch. 10a, R. S. 1891. The County Court held that they did; that that court therefore had jurisdiction of the matter and that the preferences attempted to be given were void (Sec. 13) and accordingly ordered that appellant Helms give bond as assignee, and proceed in the distribution of the moneys in his hands, the proceeds of said sale, under the further direction of the court.

Whether this holding was proper depends upon the true construction of the statute. In quite a number of cases the Supreme Court has given it a construction applicable to the conceded facts shown by this record. Without presuming to vindicate that construction, or quoting *in extenso* from the opinions in these cases, we shall refer to them only far enough to warrant, in our opinion, the conclusion that it is in conflict with that of the County Court given in this case.

First, as to what constitutes an assignment within the meaning of the act. In Weber v. Mick, 131 Ill. 533, the court approved and adopted the definition in Burrill on Assignments, sections 2 and 3—a transfer, without compulsion of law, by a debtor, of some or all of his property to an assignee or assignees, in trust to apply the same or the proceeds thereof to the payment of some or all of his debts and

to return the surplus, if any, to the debtor. It implies a trust, and contemplates the intervention of a trustee, and assignments to creditors directly and not upon trust are not such.

In Schroeder v. Walsh, 120 Ill. 403, it was said : " Notwithstanding that statute, a debtor may pay one creditor in full, either in money or by the sale of his property. That act applies only to conveyance of property to an assignee or trustee, in trust, to convert the same into money for the benefit of creditors of the assignor."

In Farwell v. Wilson, 133 Ill. at p. 49, the court outlines such an assignment as " it has always been understood in this State "—being " a written deed of conveyance, executed by the assignor, as party of the first part, to the assignee, as party of the second part, reciting the grantor's indebtedness and inability to pay, and conveying his property, real and personal, by apt words of sale and transfer, to the assignee, in trust to take possession of and sell the same, and to collect the outstanding debts, and out of the proceeds to pay the creditors "—and holds that it was preferences in instruments such as are above described that the legislature intended to prohibit. The mere form of the instrument is, no doubt, immaterial, provided the operation of it is to create a trust in the property conveyed, for the benefit of credit- ors. It must be an actual trust, created by operation of the instrument itself. The court has repeatedly said that the statute contemplates no such thing as a constructive trust.

These cases further hold that there must be an absolute transfer of the whole interest of the assignor, legal and equitable, in the property assigned, in trust for the benefit of creditors; and hence that absolute conveyances made directly to the creditor in payment, or any form of lien so given as security for the payment of a *bona fide* debt, though having the effect to give him a preference, is not an assignment for the benefit of creditors within the meaning of the statute. Wherever such instruments have been held void under Sec. 13, it has been upon the ground that, having been made in

contemplation of an assignment in trust afterward actually executed, they were to be deemed a part of it. Preston v. Spalding, 120 Ill. 208; Young v. Clapp, N. E. Rep., Vol. 32, p. 187. Otherwise a debtor, solvent or insolvent, notwithstanding the statute, may lawfully transfer any part or the whole of his property, absolutely, in payment, or incumber it by mortgage, deed of trust in the nature of a mortgage, judgment confessed, or pledge, as security for the payment of such debts preferred. First Nat. Bank of Chicago v. North Wisconsin Lumber Co., 41 Ill. App. 343; Young et al. v. Clapp et al., N. E. Rep., Vol. 32, p. 187, and all the cases, *supra.*

We perceive no conflict between these cases or any of them, and that of Farwell v. Cohen, 138 Ill. 216, so much relied on by counsel for appellees, as to what is necessary to constitute an assignment for the benefit of creditors. In the latter it is defined just as in Weber v. Mick and others, and in its application to the instrument there in question, which was in the form of a bill of sale of a stock of goods from the debtor to one of his creditors, the court held that on its face it was an absolute transfer of the whole interest, legal and equitable, in the property, without any condition of defeasance, providing for its return upon payment of the debts mentioned, and was made to Cohen expressly in trust, as well for the benefit of other creditors named, with preferences. By all the tests stated in the other cases, or here sought to be applied, it must have been held an assignment within the meaning of the statute. By the same tests stated in that case and the others cited, those here in question were not. The notes and book accounts of the debtor were absolutely assigned directly to the creditors named, involving no trust, but in payment of debts not denied to have been *bona fide* due and owing by him to them. The others were also made directly to the creditors therein, respectively, named, without the intervention of any trustee or the creation of any trust for the benefit of creditors, and they were both in form and effect, chattel mortgages. They did not, in terms or effect, absolutely transfer the whole interest of the debtor,

legal and equitable, in the property. They did contain a condition of defeasance providing for its return upon payment of the debts mentioned.

From the fact that they were given to secure the payment of notes so soon to become due, and the assumption—which we do not say was unwarranted—that having thereby disposed of all his property, Ross had no hope or intention to redeem, but expected to go out of business, it is argued that the liberal construction of the statute, as being " intended mainly for the benefit of creditors of the insolvent, so as to prevent the evils and advance the remedy in view, which the court has so often declared. to be proper," would hold these instruments to be in effect an assignment in trust, within its provisions, or in fraudulent evasion of its provisions.

This would be a constructive assignment; a thing which the statute does not contemplate. The premises from which this conclusion is drawn do not change the character of the instruments. They are still but securities given to the creditor directly, and subject to the right of redemption, with no trust whatever for the benefit of creditors, but at most a trust, as to the excess, if any, for the benefit of the debtor, which the law would imply if it were not expressed. And the court say in Farwell v. Nillson, *supra*, that to hold such an instrument to be an assignment would not be construction, even the most liberal, but judicial legislation. In the cases cited by counsel, Hide and Leather National Bank v. Rehm, 126 Ill. 461, Hanford v. Prouty, 133 Ill. 355, and Hier v. Kaufman, 134 Ill. 223, the instruments in question were followed by actual assignments, and the language relied on must be considered as referring to such cases. White v. Cotzhausen, 129 U. S. 329, also cited, was expressly based on Preston v. Spalding, which was a like case. In Moore v. Meyer, 47 Fed. Rep. 99, this case was explained, and the Illinois cases reviewed in an elaborate opinion by Judge Allen (U. S. Circuit Court for Southern District of Illinois), and it is held as in accordance with the construction of the statute by our Supreme Court, that such instruments do

not, of themselves, even in effect, constitute an assignment. Nor, when not made in view of an actual assignment following, can it be regarded as a fraudulent evasion of the statute; because the debtor, though intending to appropriate all his property to the payment of his debts, is not bound to make an assignment. In so appropriating it by absolute conveyances, or mortgage directly to the creditors therein named, not creating a trust, he exercises a clear legal right, and may thus distribute it as he sees fit. His right by such means to prefer some creditors to others is not affected by the statute.

Appellant Ross did not intend to make an assignment for the benefit of creditors and never did make it, for the reason that he did intend to make preferences and knew he could not do so by such an instrument.

It is claimed that the authority to the sheriff of Hancock county to execute the powers given to the mortgagees made him a trustee, and the mortgages an assignment. We think not. They did not purport to give him any interest, legal or equitable, in the property. They did not appoint him to execute the powers referred to, but only authorized him to do so as far as the mortgagor was concerned. Under that authority he could do nothing with it, except by consent and under the direction of the mortgagees. They, as a body, could not take possession nor sell, but must act through some individual, and the mortgagor on his part consented that the sheriff might act for them. They could have appointed another notwithstanding the authority given him by the mortgagor.

Baldwin did in fact first take possession, and he turned it over to the sheriff as a mere minister, without title or interest. He could have done nothing in the premises in his own name or right. Nor did he affect or pretend that he could or did. He was in no sense an assignee or trustee.

For the reasons stated we are of opinion that the County Court erred in its holding and order, which will therefore be reversed.