## W. SCOTT MATHEWS

*v.*

## ADOLPH L. REINHARDT.

*Filed at Mt. Vernon October 27, 1893—Rehearing denied May Term, 1894.*

1. FRAUDULENT CONVEYANCE—*innocent purchaser.* The frauds committed by a debtor upon his vendors and creditors, in which a purchaser from him did not participate and of which he had no notice, can not be shown for the purpose of defeating the title to the goods purchased by the latter.

2. Before a sale of property can, as against the purchaser, be pronounced void on the ground of fraud, it must appear that he participated in, or at least had notice of, the fraud at the time he purchased, and in the absence of such proof, evidence of fraud by the seller alone is wholly immaterial.

3. SAME—*fraud not presumed.* In an action in which a sale of goods by a debtor is attacked as in fraud of creditors, the court instructed the jury that fraud can not be presumed, but must be proved: *Held,* that the instruction announced a correct proposition of law as applied to the case, and that it was not obnoxious to the objection that it must have been understood by the jury as holding that fraud must be proved by direct evidence, and not by circumstances.

4. Where goods purchased were attached in the hands of the purchaser, on the ground that the sale was made in fraud of the rights of the creditors of the original vendor, the court instructed the jury, "that an attaching creditor can acquire, through his attachment, no higher or better right to the property or assets attached than the defendant in the attachment had when the attachment was issued, unless the said creditor can show fraud or collusion between the said defendant in attachment" and the purchaser, to injure or impair the rights of such creditor. There was no evidence charging the purchaser with notice of any fraudulent intent in making the sale: *Held,* that there was no error in the instruction.

5. SAME—*notice of insolvency—whether notice of fraudulent intent of vendor.* An insolvent debtor sold all his stock of goods to a brother-in-law in part payment of his debt to the latter, and the brother-in-law sold the goods to the plaintiff, who knew that the debtor had failed in business, and they were attached by a creditor: *Held,* that the facts of such knowledge alone did not import a fraudulent intent, nor was it sufficient to put the plaintiff on inquiry.

6. Same—*inadequacy of price.* The general rule is, that mere inadequacy of price is not, of itself, a ground for setting aside a transfer of goods as fraudulent, but the inadequacy may be so great as to amount, of itself, to evidence of fraud.

7. If a failing or insolvent debtor sells his goods to a brother-in-law at their actual value, the fact that the latter sells them to another for less than their value, will, of itself, have no tendency to charge the purchaser from him with fraud.

8. Practice—*excluding evidence for failure to show its application.* Where evidence is admitted on the assurance of counsel that he expects to show its application to the adverse party by further proof, and no such evidence is given, it is proper for the court to instruct the jury to disregard such evidence, on motion of the party objecting thereto.

9. Same—*error will not always reverse.* Where there is no evidence tending to charge a purchaser of goods with notice of any fraud in the sale to his vendor, the failure of an instruction to hold that notice of such fraud, even without active participation therein on his part, would be sufficient to defeat his title, is not prejudicial error.

Writ of Error to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. B. R. Burroughs, Judge, presiding.

Mr. Clark Varnum, and Mr. S. L. Dwight, for the plaintiff in error:

A fraudulent sale or conveyance is one in which the object, tendency or effect is to defraud another, or the intent in which is to avoid some duty or debt due by or incumbent upon the party making it. Wait on Fraud. Con. sec. 15; Addison's Law Dic. title "Fraudulent Conveyances;" 2 Kent's Com. 440; 1 Story's Eq. Jur. secs. 349, 352; *McKibbin* v. *Martin,* 64 Pa. St. 352.

There must be a concurrence of three elements: a creditor to be defrauded, a debtor intending to defraud, and a conveyance of property out of which the creditor could have realized his claim or some portion thereof. *O'Conner* v. *Ward,* 60 Miss. 1036; *Hoyt* v. *Godfrey,* 88 N. Y. 669.

Withdrawing from the jury evidence tending to prove the defendant's case was error. *Holliday* v. *Burgess,* 34 Ill. 193;

*Merricks* v. *Davis,* 65 id. 319; *Craig* v. *Peake,* 22 id. 185; *Kohl* v. *Lindley,* 39 id. 195; *Crowley* v. *Crowley,* 80 id. 469.

Notice of the fraudulent intent of the seller is sufficient to invalidate the title to the property sold, in the hands of the purchaser with such notice. *Cowling* v. *Estes,* 15 Bradw. 255; *Steere* v. *Hoagland,* 39 Ill. 264; 50 id. 377; *Boies* v. *Henney,* 32 id. 130; *Butters* v. *Haughwout,* 42 id. 18; *Cochran* v. *Stewart,* 21 Minn. 435; *Caldwell* v. *Bartlett,* 3 Duer, 353; *Devoe* v. *Brandt,* 53 N. Y. 462; *Crawford* v. *Kirsey,* 55 Ala. 282; *Loeb* v. *Flash,* 65 id. 226; *Goetz* v. *Hanchett,* 40 Ill. App. 206; *Brown* v. *Riley,* 22 Ill. 45; *Rothgerber* v. *Gough,* 52 id. 436.

Notice of the vendor's fraudulent intent is *per se* evidence of *mala fides,* and renders the sale fraudulent, without reference to the purchaser's actual intent. *Hanchett* v. *Goetz,* 25 Bradw. 445.

One who buys with notice of the fraud of his vendor in obtaining property is not a *bona fide* purchaser. *Meacham* v. *Collignon,* 7 Daly, 402; *Stearns* v. *Gage,* 79 N. Y. 102; *Rateau* v. *Bernard,* 3 Blatch. 244; *Railroad Co.* v. *Kennedy,* 70 Ill. 361; *Jewett* v. *Cook,* 81 id. 260.

A purchaser who pays a valuable consideration is not protected if he has knowledge of the fraudulent intent, or of facts sufficient to put him on inquiry. *Gill* v. *Crosby,* 63 Ill. 190; *Hanchett* v. *Kimbark,* 118 id. 121; *Slattery* v. *Stewart,* 45 id. 293; *Doyle* v. *Teas,* 4 Scam. 202; *Cowling* v. *Estes,* 15 Bradw. 253.

Whatever is sufficient to put a subsequent purchaser upon inquiry as to the acts of others must be considered legal notice. *Hatch* v. *Bigelow,* 39 Ill. 546; *Harper* v. *Ely,* 56 id. 179; *Babcock* v. *Lisk,* 57 id. 327; *Bent* v. *Coleman,* 89 id. 364; *Railroad Co.* v. *Kennedy,* 70 id. 350; *Shephardson* v. *Stevens,* 71 id. 646; *Russell* v. *Ransom,* 76 id. 167; *Watt* v. *Scofield,* id. 261.

Messrs. W. & E. L. STOKER, for the defendant in error:

An insolvent debtor may prefer one creditor by paying him in full. *Wood* v. *Shaw*, 29 Ill. 444; *Waddams* v. *Humphrey*, 22 id. 661; *Gray* v. *St. John*, 35 id. 237; *Payne* v. *Miller*, 103 id. 442; *Tomlinson* v. *Matthews*, 98 id. 178.

Charles Reinhardt was an innocent third party. *Spicer* v. *Robinson*, 73 Ill. 519.

To impeach a sale for fraud, both vendor and vendee must participate in the fraud, or be shown to have intended to commit the fraud. *Hatch* v. *Jordan*, 74 Ill. 417; *Samuel* v. *Agnew*, 80 id. 553.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action of replevin, brought by Adolph L. Reinhardt against W. Scott Mathews, to recover a stock of jewelry. The defendant pleaded *non cepit, non detinet*, property in John W. Poe, and two special pleas of justification as sheriff of Marion county, under two writs of attachment against the property of John W. Poe, one in favor of C. H. Knight & Co., and the other in favor of the Meriden Brittania Company. At the trial, the verdict of the jury and judgment of the court were in favor of the plaintiff, and that judgment having been affirmed by the Appellate Court, the judgment of affirmance is now brought to this court by writ of error.

In the year 1888, and for several years prior thereto, John W. Poe was engaged in the jewelry business at Centralia, Marion county, and was the owner of a small stock of jewelry. Near the close of the year 1888, he became largely indebted and insolvent, he having during the latter part of that year, purchased a large quantity of goods, consisting principally of diamonds, valuable watches and other costly goods, amounting to from $12,000 to $16,000. During the time he was carrying on the business, he had borrowed various sums of money, at different times, from John C. Fears, his brother-in-

law, who resided at St. Louis, Missouri, and was still indebted to him to a considerable amount for such loans.

Just prior to his failure, he seems to have applied to Fears for a further loan, which was refused, but Fears, on the 27th or 28th day of December, 1888, came to Centralia to see how matters stood, and finding them, as he says, in a pretty bad shape, he bought Poe's stock of goods, which at that time invoiced at about $2700, paying him therefor by giving him credit for the amount of the invoice on his indebtedness. This left a considerable balance of the indebtedness still unpaid. The evidence shows that but a very small part if any of the goods which constituted Poe's recent purchases were in his store at that time, and nothing is shown as to what had become of them. Possession of the stock of goods, and of the store in which they then were, was turned over to Fears at the time of the sale to him, and he left them in the possession of E. L. Stoker, his attorney and agent, and returned to St. Louis the next morning.

Adolph L. Reinhardt, the plaintiff, had formerly been in Poe's employ, but had not been with him for one or two years prior to the failure. The day after the sale to Fears, Stoker met the plaintiff and said to him that he had a stock of goods which he wished to sell to him, and the plaintiff asking what stock, Stoker explained that Fears had bought Poe's stock. The plaintiff then said that he did not have money enough to buy the stock, but would like to buy it if he could get his father to help him. Stoker then proposed to the plaintiff to go with him to see his father about the matter. They accordingly went to Lebanon, Illinois, where the plaintiff's father lived, and laid the matter before him, and he, to satisfy himself as to the condition and value of the stock, and the advisability of buying it, sent Fred Pessold, his son-in-law, and Charles Reinhardt Jr., another son, to Centralia, to examine the goods. They accordingly went and made the examination, and after having done so, they, acting on behalf of Charles Reinhardt Sr.,

the plaintiff's father, offered Stoker $1500 for the stock, which offer was refused. They finally offered $1600, which Stoker declined to accept without first consulting Fears. This was on the 31st day of December, and on that day, Stoker, Pessold and Charles Reinhardt Jr. went to St. Louis to lay the offer before Fears. The latter accepted the offer, and a bill of sale of the stock of goods, furniture, fixtures, etc., was made out and signed by Fears, running from him to the plaintiff, and bearing date January 1, 1889. The next morning Stoker, acting for Fears, and Pessold and Charles Reinhardt Jr. went to Lebanon, and there the sale was consummated, the bill of sale and the key to the store being delivered to Charles Reinhardt Sr., and he paying therefor $900 in cash, and giving his note for the residue of the purchase money, which note was afterwards paid. The purchase was made by Charles Reinhardt Sr. for the purpose of setting up his son, the plaintiff, in the jewelry business, and upon the completion of the purchase, he sent the bill of sale and the key of the store to the plaintiff at Centralia, and the latter thereupon took possession of the store and goods.

There is evidence tending to show that the plaintiff, and perhaps his father, at and prior to the time of the purchase, knew that Poe had failed in business and become insolvent, but beyond this, so far as we are able to discover, there is no evidence of any knowledge on their part or of notice to them of any fraudulent transaction on the part of Poe. A few days after the plaintiff took possession, the attaching creditors sued out their writs of attachment, and caused the same to be levied upon the stock of goods in question as the property of Poe. To regain possession of the goods the plaintiff thereupon sued out this writ of replevin.

The theory upon which the attachments were levied was, that the sale by Poe to Fears, and the sale by Fears to the plaintiff, or to the plaintiff's father for the plaintiff, were made with intent to hinder, delay and defraud the creditors of Poe,

and that, as against them, such sales were void, so as to enable them to still treat the goods as the property of Poe, and to levy upon them as his. As all contested questions of fact are conclusively settled by the judgment of the Appellate Court, the question whether these sales were fraudulent in fact must be deemed to have been conclusively determined in the plaintiff's favor, and the judgment of the Appellate Court must be affirmed, unless it appears that material errors of law intervened in the rulings of the trial court.

The first assignment of error to which our attention is directed calls in question an instruction given to the jury at the instance of the plaintiff, withdrawing certain evidence which had been offered on behalf of the defendant, and directing the jury to disregard it. The evidence thus withdrawn related to the purchase of goods by Poe from the attaching creditors and others during the few months prior to his failure, the circumstances under which those purchases were made, and the representations by Poe as to his financial circumstances and standing, and upon the strength of which he was enabled to obtain credit from the attaching creditors and others. This evidence, if it had any bearing at all, tended to show fraud on the part of Poe in the purchase of the goods, which might perhaps have justified the sellers in rescinding the sales and in reclaiming the goods sold. It was admitted over the plaintiff's objection, on the statement by the defendant's counsel that he expected to be able to connect the plaintiff with it. But no evidence having that effect being given, the jury, at the close of the trial, were instructed to disregard the evidence thus objected to. We think, under the circumstances, the instruction was proper. It is not claimed that the goods thus purchased by Poe formed a part, or at most any considerable part, of the stock of goods now in controversy. If any portion of them went into the stock, and were there at the time the plaintiff purchased, they are unidentified. But however that may be, it is clear that frauds com-

41—149 ILL.

mitted by Poe, in which the plaintiff did not participate, and of which he had no notice, can not be received for the purpose of defeating his title to the goods purchased by him. Before a sale of property can, as against the purchaser, be pronounced void on the ground of fraud, it must appear that he participated in, or at least had notice of the fraud, at the time he purchased, and in the absence of such proof, evidence of frauds by the seller alone is wholly immaterial.

The defendant's counsel have attempted to criticize most of the other rulings of the trial court in the instructions to the jury, but on careful examination of the instructions, we are disposed to hold that, under the evidence in the case, they are in no respect materially erroneous. The first and second instructions given for the plaintiff are as follows:

1. "The court instructs the jury that fraud can not be presumed, but must be proved.

2. "That fraud is never to be imputed where the transaction may be fairly reconciled with honesty, and if the weight of evidence is in favor of that conclusion, it should always be adopted."

The first of these instructions is objected to. That it announces a correct proposition of law as applied to this case, can not be doubted. It may be admitted that there are cases where the law will raise a *prima facie* presumption of fraud, so as to throw upon the party implicated, the burden of exculpating himself, as in case of dealings by a guardian with his ward, or by an attorney with his client, and in other cases of dealings between parties holding fiduciary relations to each other, but no such presumption arises in this case. Here no such relations between the parties exist, and their transactions must be held, *prima facie*, to be fair and honest, and consequently, before fraud can be held to exist, it must be proved.

Nor do we think the instruction obnoxious to the objection made to it, viz., that it must have been understood by the jury as holding that fraud must be proved by direct evidence

and not by circumstances. There is certainly nothing in the language used warranting or even suggesting that view. It simply holds that fraud must be proved, but does not attempt to deal in the least with the question of the mode of proof. And when read in connection with the second instruction which immediately follows it, and in fact forms with it one continuous proposition, it is clear that there was no possible danger that the jury were misled in the way supposed.

The third, fourth and fifth instructions given for the plaintiff may be considered together, and are as follows:

3. "The court instructs you for the plaintiff, that an attaching creditor can acquire through his attachment no higher or better right to the property or assets attached than the defendant in the attachment, (in this case John W. Poe), had when the attachment was issued, unless the said creditor can show fraud or collusion between the said defendant in attachment in this case, and A. L. Reinhardt, to injure or impair the rights of said creditor.

4. "The court instructs the jury for the plaintiff, that although you may believe from the evidence, that the sale by Poe to Fears was made or contrived with the intent or purpose to delay his creditors, yet, before you can find for defendant Mathews, you must also believe, from a preponderance of the evidence, that Reinhardt contrived the conveyance, with malice, fraud, covin, collusion or guile, for the purpose of hindering or delaying said creditors.

5. "The court instructs the jury for the plaintiff, that an innocent third party is to be protected in his rights of purchase and payment of money, and in this case, unless you believe, from the evidence, that the plaintiff confederated with Poe and Fears and purchased the goods to hinder and delay Poe's creditors in the collection of their debts, and was not a *bona fide* purchaser, your verdict should be for the plaintiff."

Although these instructions are all vigorously assailed, we are unable to see any material error in them, especially as

applied to the evidence in this case. The third instruction merely announces the principle that, an attaching creditor acquires no better right to the property attached than the defendant in the attachment had at the time of the levy, unless fraud or collusion between him and his vendee is shown, but no attempt is made to define what would constitute such fraud and collusion as would render the sale void as against creditors. It in no way contravenes the rule that notice to the vendee of the fraudulent intent of the vendor makes him participant of the fraud. But even admitting that the instruction is technically defective in failing to recognize the rule, that notice to the vendee of the fraudulent intent of his vendor, would, of itself, without any active participation on his part in the fraud, render the sale void as to creditors, we find no evidence, and none is pointed out, which, in our judgment, tends to charge the plaintiff with notice of such fraudulent intent. It is true that plaintiff knew that Poe had failed in business and become insolvent, but that fact alone did not import a fraudulent intent, nor was it sufficient to put the plaintiff on inquiry for such intent. A party who has become insolvent, so long as he retains dominion over his property, has a right to dispose of it, and an intending purchaser, unless something more than the mere fact of insolvency is brought to his attention, may purchase and obtain a good title, even as against creditors.

The fourth instruction merely holds that if the sale by Poe to Fears was fraudulent, the plaintiff's title can not be successfully assailed, unless it is shown that he was participant in the fraud. What we have said in relation to the third instruction applies here. As there was no evidence tending to charge Reinhardt with notice of any fraud in the sale to Fears, we are unable to see how the failure of the instruction to hold that notice to Reinhardt of such fraud, even without active participation therein on his part, would be sufficient to defeat

his title, was prejudicial error. Substantially the same observation applies to the fifth instruction.

The plaintiff's eighth instruction was as follows:

8. "The court instructs the jury, for the plaintiff, that the sale and purchase of goods for a less sum than the actual cash value is not fraudulent, and although you may believe, from the evidence, that Reinhardt purchased the goods for less than their real value from Fears, that, of itself, is not evidence of fraud or circumvention on the part of Reinhardt, and if you believe Reinhardt acted in good faith, you should find for the plaintiff."

The general rule is, that mere inadequacy of price is not of itself a ground for setting aside a transfer of goods as fraudulent. Yet the inadequacy may be so great as to amount, of itself, to evidence of fraud. But the inadequacy of which the instruction treats does not apply to the price paid by Fears to the insolvent debtor, but to the price paid by the plaintiff, or rather by the plaintiff's father, to Fears. Clearly, if Fears paid Poe an adequate price, the fact that he sold them to Reinhardt for less than their actual value has of itself no tendency to charge the purchaser from him with any fraud of which the defendants in this suit can take advantage.

Several other criticisms upon the rulings of the trial court in the instructions are made by counsel, which we do not deem of sufficient importance to require discussion. It is sufficient to say that we have duly considered them, and are of the opinion that they are without substantial merit. We find no material errors in the record, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*

Mr. JUSTICE PHILLIPS, having heard this case in the Appellate Court, took no part in its decision here.