## James L. Smith v. R. J. Birge.

1. INTENT—*what competent to establish.* Conversations at the time of a sale of personal property are competent to establish fraud or the lack of it.

2. ATTACHMENT—*what judgment in, tends to prove.* A judgment in attachment may be competent as tending to show that a sale in issue is fraudulent.

3. REPLEVIN—*when lies to recover merchandise sold and delivered.* Replevin lies to recover merchandise sold and delivered where the same was obtained upon credit obtained by false pretenses.

4. FRAUDULENT SALE—*when may exist.* A sale as to creditors may be fraudulent though as between the parties made in good faith.

Action of replevin. Appeal from the Circuit Court of Marion County; the Hon. WILLIAM M. FARMER, Judge, presiding. Heard in this court at the August term, 1905. Reversed and remanded. Opinion filed March 22, 1906.

FRANK F. NOLEMAN, for appellant.

J. J. BUNDY, for appellee.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

This was an action of replevin brought by R. J. Birge, appellee, in the Marion County Circuit Court against James L. Smith, sheriff of Marion county, appellant, to recover a stock of groceries and fixtures seized by appellant, by virtue of a writ of attachment issued from said court in a suit wherein Kohl Brothers, wholesale grocers, were plaintiffs, and Skipper Brothers, retail grocers and owners of the stock in question, were defendants. The declaration consists of two counts, the first in *cepit* and the second in *detinet.* Four pleas were filed by appellant, the defendant below, the first being *non cepit,* and the second *non detinet,* the third set up property in Skipper Brothers, and the fourth justified the taking of the property by the defendant as sheriff under the writ of attachment, averring title to the same to be in said Skipper Brothers. Replications were filed, issues joined and the cause tried by a jury. The ver-

dict was in favor of appellee upon which judgment was entered, awarding the possession of the goods to appellee; from which judgment the appellant prosecutes this appeal.

The firm of Kohl Brothers were engaged in the wholesale grocery business in Centralia during the summer of 1904, and extended credit to the amount of $620 to Skipper Brothers, retail grocers in that city. In September, 1904, Kohl Brothers withheld further credit to Skipper Brothers, but continued to sell them on cash orders. Skipper Brothers became insolvent and were owing some $420 in addition to the $620 they owed Kohl Brothers. They had no property subject to execution except this stock and fixtures. On Friday evening, September 9th, appellee, after the examination of the stock and some bartering, made Skipper Brothers an offer of seventy cents on the dollar for the stock and $95 for the fixtures. This offer was accepted, but no money was paid, and the deal was not to be closed until an invoice of the goods had been taken. All the next day, Saturday, Skipper Brothers continued in possession and operation of the store in the usual way, purchasing goods from Kohl Brothers, selling to the retail trade out of the stock and retaining the money received. On Saturday evening about six o'clock, appellee was informed by Charles Rowe, assistant manager for Kohl Brothers, of Skipper Brothers' indebtedness to Kohl Brothers and that further credit had been denied. Appellee then stated to Rowe " that there was going to be something doing there and that Kohl Brothers had better take care of themselves," but did not intimate that he had bargained for the purchase of the stock. On Saturday night, after business hours, the doors were closed and appellee and Skipper Brothers invoiced the stock at $436 and the fixtures at $74, for which appellee gave his check. Kohl Brothers sued out and had levied an attachment Monday morning. The stock of goods were then still in the store with no visible change of possession, except that the door was locked and appellee held the key, which he refused to deliver, and claimed he had purchased the stock.

Error is assigned upon the action of the trial court in admitting and excluding testimony, in the giving and refusal of instructions, and in overruling the defendant's motion for a new trial.

It is first complained that appellee and the witness Joseph Skipper were permitted to testify to a conversation in which Skipper told appellee, that with what he received on sale of the stock and expected collections on account he could pay his debts and "have a little left." It is testified that this conversation occurred on Friday evening in the negotiations for the sale of the goods to appellee. As bearing upon the question of appellee's knowledge of his vendor's insolvency and intent at the time of purchase, it was proper evidence and the court did not err in denying defendant's motion to exclude it. To maintain the defense under the pleading in this case it was necessary to prove that the sale by Skipper Brothers was fraudulent and that it was made by them with intent to hinder and delay their creditors. The judgment against them in attachment if not conclusive was highly material as evidence of that fact. The court erred in excluding it. The schedule made by Skipper Brothers a few days after the sale was an admission under oath as to financial condition, and tended to prove insolvency when the sale was made; an important fact in the defense. The schedule should have been admitted in evidence. The statement of the telephone operator to Kohl, that appellee refused to answer the 'phone, was properly excluded. This was merely the conclusion of the operator. The testimony of the witness Dew on cross-examination, which was excluded by the court, was not within the direct examination, and with timely objection to it on that ground the court's ruling was justified. Appellee's second given instruction was as follows:

"The court instructs the jury that an innocent third party is to be protected in his rights of purchase, and payment of money, and in this case, unless you believe from the evidence, that the Skipper Brothers sold the stock of groceries with the purpose and intention of defrauding their creditors, and that Birge purchased the stock with the

knowledge of such fraudulent purposes and intent on their part, then you should find for the plaintiff."

This instruction was erroneous, highly misleading and prejudicial to the rights of the defendant. To tell the jury that an innocent third party, meaning the plaintiff, is to be protected in his rights, without at the same time telling them what innocence means under the facts presented, was well calculated to exclude from consideration the evidence strongly tending to prove that plaintiff knew the Skipper Brothers' insolvency and that their purpose and the effect of the sale was to hinder and delay their creditors. The evidence of plaintiff and Skippers was to the effect, that they did not intend to defraud, hinder or delay creditors. Whether they did or did not so intend was the controlling issue in the case, to be determined, not alone by the testimony of the parties to the transaction, but from all the facts and circumstances from which a fraudulent intent might be presumed. It might very well be that plaintiff and the Skippers, though acting without purpose of fraud, as that term is popularly understood, were nevertheless guilty of knowingly doing that which necessarily operated to hinder and delay creditors in the collection of their claims. It should have been left to the jury to say whether or not it was the intention to hinder and delay creditors. This instruction, though calling for a verdict, wholly ignores that important element of the defense. Only a part of the language used is identical with the instruction found in Mathews v. Reinhardt, 149 Ill. 635, to which appellee refers in argument, and it will be observed that the part omitted in the copy, if a copy was attempted, makes all the difference between a good and a bad instruction, even under the facts of that case where the court says, in discussing the instructions: "We find no evidence, and none is pointed out, which, in our judgment, tends to charge the plaintiff with notice of fraudulent intent," that is, intent to *hinder and delay* creditors. The plaintiff's fourth instruction should not have been given. Under the issues, the burden was on the defendant to prove the transaction

fraudulent, and proof had been given tending to support that contention. In considering the evidence bearing upon the question of fraud in this case it was not for the jury to presume one way or the other. The argument embodied in the instruction is fallacious. The transaction called in question on the trial might have been "fair and honest" as between appellee and the Skipper Brothers, and yet have been fraudulent as to appellant and other creditors. By this instruction the verdict was authorized if the jury believed that appellee or Skipper Brothers or both were innocent of any fraudulent purpose or intent and that as to such intent the transaction was fair and honest, whereas it is the law, that whatever the actual intent of the parties the law may impute fraud if the necessary effect of what is knowingly done is to hinder and delay creditors. While dealing in presumptions we may draw from the practice in criminal proceedings and with equal propriety instruct the jury, that every person is presumed to intend the consequence of his voluntary acts. It is not a legally correct proposition applicable to this case, that "a transaction equally capable of two constructions, one that is fair and honest and the other that is dishonest, the presumption will be that the transaction is honest and fair." As well instruct the jury, in an action of assumpsit or tort, that the law presumes the defendant not liable or not guilty. In all such cases it is sufficient to say, that the burden of proof is on the plaintiff, the significance of which is that under a charge made and denied evidence in support of the charge must first be introduced. So far as the presumptions are to be indulged, it is merely that without evidence the plaintiff has no cause of action. Until evidence is introduced there is nothing for the court or jury to determine. What we have said respecting the fourth instruction applies with even greater force to the fifth. As already observed the appellee and Skippers might have acted in good faith, as between themselves, and still the transaction be fraudulent as to creditors. The jury are told that "in this case if you find that there was *a sale as claimed* it will

be presumed that plaintiff and Skipper Brothers acted honestly and in good faith in making the same until," etc. The sale as claimed, by whom? The sale as claimed by appellee and Skipper Brothers was honest and fair, made in good faith, without fraudulent intent on the part of anybody. That claimed by appellant was fraudulent as to creditors. It was only such sale as claimed by appellee that it could rightly be presumed that appellee and Skipper Brothers acted honestly and in good faith. It was prejudicial error to give the instruction.

As this case is to be remanded for another trial, we forbear discussion of the evidence. The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*