ROBERT A. JACKSON, AS SHERIFF OF HILLSBOROUGH COUNTY, PLAINTIFF IN ERROR, v. THE CITIZENS BANK AND TRUST COMPANY, A CORPORATION, DEFENDANT IN ERROR.

1. A purchase made by one not a creditor is fraudulent and void as against creditors, even though the purchaser has paid an adequate consideration, where the seller has at the time a purpose or intent to defraud his creditors, or to hinder and delay them in the collection of their debts and the purchaser knew of such purpose or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence woud have led to the discovery of such fraudulent purpose of the seller and the buyer did not make such inquiry. If the purchaser has paid value and has not such knowledge, he is a *bona fide* purchaser, and will be protected as such.

2. A person who receives property from an insolvent debtor in payment of an *antecedent debt* occupies a more favored position than a purchaser for a *present consideration*. A preferential transfer of property can not be declared fraudulent as to other creditors, although, the debtor in making it intended to defeat their claims, and the creditor had knowledge of such intention, if the preferred creditor did not actually participate in the debtor's fraudulent purpose. If the only purpose of the creditor is to secure his debt, and the property is not worth materially more than the debt, the transaction is not frauduent. And this is so, although the creditor knows that the debtor is insolvent, and that the transfer is of all the debtor's property, that there are other creditors, and the debtbor is actuated solely by a desire to defraud his own creditors, and that the effect of the debtor's action will be to defeat them. But the creditor must act in good faith, for, if he takes the conveyance for the purpose of aiding in the fraud, it is void.

3. If a creditor purchaser, in seeking to recover his debt, goes further and buys more than enough to 'pay his debt, there being no necessity for his so doing in order to secure his claim, and pays partly with his debt and partly in cash, he combines the character of a volunteer purchaser with that of a creditor, and is to be treated merely as a purchaser, and the rules relating to a volunteer purchaser must be applied to him. If the creditor purchases more than enough property to pay his debts, although he pays a consideration for the remainder, the sale is void, if he has actual knowledge of the debtor's fraudulent intent, or knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of such fraudulent purpose of the seller.

4. There is an exception to the rule that a creditor buying more than enough property to pay his debt, paying with his debt and partly in cash, becomes a volunteer purchaser, and that exception is this, that where, by agreement, the purchaser or seller applies the cash in payment of the other indebtedness of the seller, the sale being otherwise fair, the sale being *bona fide* and for a fair valuation, it will not be set aside. And the rules which apply to a creditor purchaser, where the debt is the sole consideration, prevail likewise in this case.

5. In determining the correctness of instructions to the jury, they must be considered as a whole, and if as a whole they are free from error, an assignment, predicated on isolated paragraphs or portions, which standing alone might be misleading, must fall.

6. The court charged the jury as follows: "If you find from the evidence in this case that Bush and Company were in failing circumstances, that they were practically insolvent, which fact was known to the bank, or which John Trice, the president of the bank, with whom the

Jackson, Sheriff, v. Citizens Bk. & T. Co.—Syllabus.

trade was made, ought to have known, that Bush and Company proposed to sell their goods to the bank, demanding four thousand dollars over and above their indebtedness to the bank, that Bush and Company intended at the time to so dispose of the four thousand dolars that their creditors could not reach it, or so that they could delay or hinder their creditors in the collection of their claims, that this fact was known to Mr. Trice, or by diligent inquiry, he could have discovered it, then the sale was fraudulent, and you should find for the defendant; provided, there were such circumstances attending the transaction, as to raise the suspicion of the *bona fide* of the transaction, in the mind of a reasonably prudent man, or to put him upon inquiry." *Held*, this charge is not erroneous, as leaving the jury to conclude that the transaction is to be judged solely by the constructive notice on the part of the purchaser, neither is it erroneous in that it permits a creditor to take goods in excess of his debt, and pay the debtor the balance.

7.  The giving of the following instruction was not error: "If you find from the evidence that, at the time of the transaction, Bush and Company had no intention of hindering, delaying or defrauding their other creditors, but intended to apply the four thousand dollars to the payment of a part of their honest debts, even if not enough to pay all of them, the sale was not fraudulent, and you should find for the plaintiff," because if Bush and Company had no intention of hindering, delaying or defrauding their other creditors, then the alienation of their goods would not be void as to creditors."

8.  The court charged the jury as follows: "If you find from the evidence that, at the time of the sale, Mr. Trice was informed by Bush and Company, or by their attorney, whom he knew, and in whose integrity and veracity he had confidence, that it was the purpose of Bush and Company to appropriate the four thousand dollars to

the payment of their just debts, even though these debts may have been owing to members of the Bush family, and there was nothing in the surrounding circumstances to arouse the suspicion of an ordinarily prudent man or to put him upon inquiry as to the purpose of Bush and Company, then the sale was not fraudulent, even though it may have been the secret intention of Bush, or of Bush and Company, to place the four thousand dollars beyond the reach of other creditors, and you should find for the plaintiff." *Held*, this charge is not erroneous, in that it disregards the distinction between means of knowledge and actual knowledge of the fraudulent intent of the seller, since the court had, in other portions of the charge, fully instructed the jury upon the effect of the actual knowledge of the purchaser of the fraudulent intent of the seller upon the validity of the sale. Neither is this charge subject to the objection that it singles out and emphasizes isolated facts favorable to the plaintiff.

9. The giving of the following instruction to the jury was was not error: "If you find from the evidence that the four thousand dollars paid Bush and Company in excess of their indebtedness to the bank was actually appropriated to the payment of the just debts of Bush and Company, even if those debts were due to members of the Bush family, and even if a large number of Bush and Company's creditors were unpaid, the sale was not fraudulent, and you should find for the plaintiff.".

10. Where the plaintiff in the circuit court brought an action of replevin against the sheriff to recover certain goods seized by him under attachments issued against the vendor of plaintiff, on the ground that the transaction between the plaintiff and its vendor was fraudulent as to the creditors of the latter, on the trial of the action of replevin, there being evidence to show that the plaintiff had paid a fair value for the goods, and

Jackson, Sheriff, v. Citizens Bk. & T. Co.—Syllabus.

there being no circumstances which would raise the legal presumption that the transaction was fraudulent, the burden of proving by a preponderance of the evidence that the transaction was fraudulent, was on the sheriff, and the court did not err in so instructing the jury.

11. Where a creditor bought substantially all of an insolvent debtor's property for a fixed price of $14,000.00, that being a fair and adequate price for the property, every cent of which was paid, ten thousand dollars of said consideration being paid by the cancellation of a bona fide existing debt, and four thousand dollars being paid in cash to a third person upon the agreement that the latter sum would be paid to certain other creditors, and this sum was in fact so paid to them, the debtor or vendor reserving no benefit to himself or interest in the property, no element of trust appearing in the transaction, the transaction between the creditor and debtor was a sale of the latter's property, and not an assignment for the benefit of creditors in contemplation of Section 2307 of the Revised Statutes of 1892.

12. The court gave the following instruction:  "A sale by a debtor in payment of and in discharge of his debt will be valid where the creditor obtains other property for which he pays cash, if such other property was not more than the debtor was entitled to retain exempt from his other creditors, and no other property was reserved by him as his exemption." *Held*, this instruction, though not relevant to the facts in the case, was not harmful to the plaintiff because the evidence proved that the debtor did not reserve as exempt any of the money he received in the sale of the goods.

13. The relinquishment of the father's claim to the earnings of his minor son may be established by direct evidence, or may be implied from circumstances. Evidence held sufficient to warrant the submission to the jury of the question of emancipation of minor sons.

14.  Requested instructions, leaving out of consideration any participation in, or knowledge, actual or constructive, on the part of the purchasing creditor of the fraudulent intent of the vendor debtor, are erroneous, and it was not error for the court to so modify the same.

15.  An instruction to the effect "that under the facts and circumstances of this case, the plaintiff, the Citizens Bank and Trust Company, is chargeable with knowledge of all facts that it could have ascertained in respect to the sale of the property in controversy by the exercise of reasonable diligence," was properly modified by the court so as to read: "Provided, you further find that the circumstances were such as to put the bank on inquiry."

This case was decided by Division B.

Writ of error to the circuit court for Putnam county.

### STATEMENT.

The defendant in error, who will be known as the plaintiff elsewhere in this opinion, replevied certain merchandise from T. K. Spencer who was then sheriff of Hillsborough county. To the declaration, a plea of not guilty was filed. Upon a suggestion of the death of Spencer, his successor in office, Robert A. Jackson, was substituted as defendant in said cause, and on the 13th day of January, 1906, a trial was had and a verdict and judgment was rendered for the plaintiff. The plaintiff in error seeks to reverse this judgment.

There are thirty-four assignments of error, questioning the sufficiency of the evidence to support the verdict and the correctness of certain charges given and refused by the court.

Without setting forth the evidence in full, we think a fair statement of so much of it as is necessary to state now is as follows: On the 13th day of May, 1898, J. M. Bush, doing a mercantile business as T. M. Bush & Co., in Tampa, Florida, owned two stocks of goods, consisting of dry goods, clothing, shoes, hats, furniture and store fixtures. One stock of goods was kept in his place of business across the street from the Citizens Bank and Trust Company, the other stock of goods was kept in his place of business in Ybor City, near Tampa, and Bush sold this property to the Citizens Bank and Trust Company, its president, John Trice, acting for the company. The company paid fourteen thousand dollars for the goods, and the record shows that, upon the trial of this cause, it was agreed that the actual value of the goods at the time of the sale thereof was fourteen thousand dollars. The sale was made in this way: On the morning of May 13th, Bush's attorney, Simonton, telephoned John Trice to come to his office. Trice demurred on the ground of sickness, whereupon the attorney told him it was to his interest to go, and Trice went to the office, where he found Bush and the attorney. The latter told Trice that Bush wished to sell him his stock of goods. Trice was surprised, and offered further financial assistance to pull Bush through. The attorney told Trice there was nothing else for Bush to do; that Bush wanted to pay Trice, and the only way to do this was to sell him the goods. At that time Bush owed the bank ten thousand dollars, borrowed money, and Bush's attorney told Trice that it would take four thousand dollars additional in money to pay prior bills or claims on the goods, in addition to satisfying Bush's indebtedness to the bank. Trice asked Simonton why Bush wanted to sell the goods, an Simonton said there was no

272        SUPREME COURT OF FLORIDA.

Jackson, Sheriff, v. Citizens Bk. & T. Co.—Statement of Case.

use for Trice to ask any questions, that Bush wanted to pay Trice, and if Trice wanted to buy the goods that was the only way Bush had to pay hm. Trice bought the goods to save the ten thousand dollars due by Bush to the bank, and went into possession of all the property at once. Trice did not know the value of the goods, he made no inquiry as to their value, took no inventory of them, he did not know whether he would be able to make out of them what he paid for them, he had been informed by Bush about two months before that the stock of goods he carried was worth (as Trice testified once) $20,000 or $25,000, or (as, he said another time) $25,000 or $30,000, or that his goods were worth that much; that at the time he bought the goods he did not know whether there was any change in their value or not. At the time of the sale Bush was insolvent, and this fact was learned by Trice in his conversation with Simonton in his office. Trice took the goods, satisfying the indebtedness to the bank and paying Simonton as attorney for other creditors of Bush $4,000 in cash. The same afternoon, Simonton introduced one Flatheur to Trice as a man likely to purchase the goods, and Trice sold them to Flatheur for $14,000, and delivered him the keys of the two stores; but before Flatheur got possession, the stores were attached by Bush's creditors, and thereupon Trice immediately rescinded the sale to Flatheur, and gave Flatheur his money back. The sale embraced substantially all of Bush's property, and it was admitted that within a few weeks of the sale Bush had purchased goods invoiced at about $15,000 which were not paid for. The $4,000 received by Simonton was disbursed by him in paying small amounts due by Bush to his employees for wages, $66.08 for rent, $144.62 in payment for a creditor represented by Simonton, $744.24 to Mrs. E. G.

Bush, administratrix of Bush's deceased partner, represented by Simonton, $300 to Simonton for professional services, and the balance of $2,600 to Bush's two sons on account of claims for wages, one of them being at that time about fourteen years of age, both living with their father as members of his family, and paying him no board, both sons were working for Bush, one of them kept the books, both collected their wages and used the money as they saw fit.

Other facts will be stated in the discussion of the various assignments of error.

Upon the close of the testimony the court charged the jury as follows: "Gentlemen of the Jury: This is an action of replevin brought by the Citizens Bank and Trust Company against the sheriff for a stock of goods purchased by the bank from J. M. Bush, doing business as T. M. Bush and Company, and which goods were afterwards seized by the sheriff by virtue of certain writs of attachment sued out by creditors of T. M. Bush and Company and of J. M. Bush as surviving partner of T. M. Bush and Company.

The admitted facts in the case show that in the spring of 1898, J. M. Bush, doing business as T. M. Bush and Company, was indebted to the bank in the sum of ten thousand dollars for borrowed money; that the bank purchased the stock or stocks of goods of Bush and Company, for the sum of fourteen thousand dollars, paying therefor the ten thousand dollars due the bank by Bush and Company and four thousand dollars in cash, and that the sum of fourteen thousand dollars was a fair and adequate price for the goods.

I charge you as a matter of law:

1st. That except in a case of a general assignment for

18—S C

the benefit of creditors, which does not enter into this case, a debtor in failing circumstances, that is owing more than he can pay, has a right to prefer one of his creditors to the exclusion of the others, in other words he can pay one creditor in full, and not pay the others at all, provided the transaction is bona fide and untainted with fraud, and, in case the payment is made by a transfer of his property, a fair and reasonable price is paid.

2nd. That when a transfer made by a debtor in failing circumstances to one of his creditors is made with intent to hinder, delay or defraud his other creditors, and the purchaser is aware of that intent, the transfer is fraudulent as to his other creditors.

3rd. That when a debtor in failing circumstances transfers to one his creditors practically all of his property, and in addition to his indebtedness receives an additional sum over and above what he owes, either in notes or cash, with the intent to appropriate the overplus to his own use and deprive his creditors of it, and the purchaser knows of such purpose, the sale is fraudulent.

4th. That when a debtor in failing circumstances proposes to sell to one of his creditors practically all of his property for more than he owes, with intent to hinder, delay or defraud his other creditors, and the circumstances under which he proposes the sale are suspicious, or the circumstances are such as to put an ordinarily prudent man on inquiry as to the purpose of the debtor, and if a diligent inquiry would have discovered the fraudulent purpose of the debtor, and the purchaser fails to make such an inquiry, the sale is fraudulent.

5th. If a debtor in failing circumstances proposes to sell to one of his largest creditors practically all his property for a price in excess of what he owes him, and the creditor

is informed, and has reason to believe that it is the purpose of the debtor to use the excess in the payment of his honest debts, even though not enough to pay all his creditors, the sale is not fraudulent as to creditors who are not paid.

6th. If you find from the evidence in this case that Bush and Company were in failing circumstances, that they were practically insolvent, which fact was known to the bank, or which John Trice, the president of the bank with whom the trade was made, ought to have known, that Bush and Company proposed to sell their goods to the bank, demanding four thousand dollars over and above their indebtedness to the bank, that Bush and Company intended at the time to so dispose of the four thousand dollars that their creditors could not reach it, or that they would hinder or delay their creditors in the collection of their claims, that this fact was known to Mr. Trice, or by diligent inquiry he could have discovered it, then the sale was fraudulent, and you should find for the defendant; provided there were such circumstances attending the transaction as to raise a suspicion of the *bona fides* of the transaction in the mind of a reasonably prudent man, or to put him upon inquiry.

7th. If you find from the evidence that, at the time of the transaction, Bush and Company had no intention of hindering, delaying or defrauding their other creditors, but intended to apply the four thousand dollars to the payment of a part of their honest debts, even if not enough to pay all of them, the sale was not fraudulent, and you should find for the plaintiff.

8th. If you find from the evidence that, at the time of the sale, Mr. Trice was informed by Bush and Company, or by their attorney, whom he knew, and in whose integrity

and veracity he had confidence, that it was the purpose of Bush and Company to appropriate the four thousand dollars to the payment of their just debts, even though those debts may have been owing to members of the Bush family, and there was nothing in the surrounding circumstances to arouse the suspicion of an ordinarily prudent man, or to put him on inquiry as to the purpose of Bush and Company, then the sale was not fraudulent, even though it may have been the secret intention of Bush, or of Bush and Company, to place the four thousand dollars beyond the reach of other creditors; and you should find for the plaintiff.

*9th.* If you find from the evidence that the four thousand dollars paid Bush and Company in excess of their indebtedness to the bank was actually appropriated to the payment of the just debts of Bush and Company, even if those debts were due to members of the Bush family, and even if a large number of Bush and Company's creditors went unpaid, the sale was not fraudulent, and you should find for the plaintiff.

You are the sole judges of the weight and sufficiency of the evidence, and of the credibility of the witnesses, and as this is an attack by the attaching creditors of Bush and Company *bona fides* of the sale, the burden of the proof is on the defendant to satisfy you by a fair preponderance of the testimony that the sale was fraudulent, and unless that has been done, your findings must be for the plaintiff.

If you find for the plaintiff, you must find simply that the property, at the time of the levy of the attachments, was the property of the plaintiff.

If you find for the defendant, then you should assess the damages at the amount for which the goods sold, to wit:

fourteen thousand dollars, with eight per cent. interest from the date they were replevined, to wit, May     1898."

The court, at the request of the plaintiff, gave to the jury the following instructions:

"1st. The law permits a debtor, even though insolvent, to prefer a creditor by paying such creditor in cash, or by a transfer of property, and although a preference thus created may operate to delay or hinder other creditors, yet, if not created for that purpose, but to secure or pay a *bona fide* debt, and only hinders or delays other creditors as to the property so appropriated to the payment of such debt, it is lawful.

*2nd.* A creditor has a right to receive personal property from his insolvent debtor in payment of a *bona fide* debt, and to pay him in cash the balance of the reasonable value of said property, if such transaction does not hinder or delay the appropriation of such property or its proceeds to the payment of the debts of the insolvent, and the creditor's knowledge of the insolvency of his debtor will not make the transaction fraudulent, if all of such cash payment is used by the debtor to pay his *bona fide* debts.

*3rd.* In order to make such a transfer void for actual fraud, the creditor must assist the debtor in hindering or delaying his other creditors, either by receiving from him an unreasonable amount of property for his debt, or assisting the debtor in retaining some benefit or advantage from the sale.

*4th.* In addition to the amount due the creditor, he has the right to pay in cash for the property purchased from his insolvent debtor the amount of any liens on the same, if the debt and the amount of the liens do not exceed the reasonable value of the property under the circumstances,

and all of the cash so paid is promptly applied to the payment of such *bona fide* debts of the debtor.

*5th.* A creditor, in the absence of fraud, has the right to be preferred, even if he knew his debtor was insolvent, and received payment of his debt in property, even if it takes all of the property of his debtor to pay him.

*6th.* Where a debtor in failing circumstances prefers one of his creditors by transferring to him property in payment of a *bona fide* debt, for a reasonable price, receiving cash for the excess above the amount of the debt, such transaction is not fraudulent *per se,* but is only fraudulent if it was the intention of the debtor to hinder, delay or defraud his other creditors, which intention must be participated in by the purchaser before the transaction is void, if the effect of such transaction was to hinder or delay creditors in procuring the application of the debtor's property to the payment of his debts.

*7th.* A debtor in failing circumstances has the right to prefer one or more of his creditors by paying them in full, either in cash, or by a transfer of property, even if the result of such preference is to disappoint his other creditors, and knowledge on the part of the creditors receiving the preference that the debtor was insolvent at the time will not make such a preference invalid.

*8th.* A sale by a debtor in payment of and discharge of his debt will be valid where the creditor obtains other property for which he pays cash, if such other property was not more than the debtor was entitled to retain exempt from his other creditors, and no other property was reserved by him as his exemption.

*9th.* A conveyance by an insolvent debtor in consideration of a *bona fide* debt due the grantee equal to the value of the property is valid as against other creditors. The

grantee's knowledge of the debtor's insolvency is not suf-
ficient to establish fraudulent intent.

10th. An insolvent debtor is not denied the right to sell
his property, but the purpose of the same must be to ap-
propriate the proceeds to the full extent to the payment of
his debts, and if the proceeds of the sale of his property
to the full extent of said proceeds were applied to the
payment of his debts, the sale will not be fraudulent.

11th. If the jury should find from the evidence that J.
M. Bush, doing business as T. M. Bush and Company, was
the owner of the stock of merchandise in controversy, and
that on the 13th day of May, 1898, he was indebted to the
Citizens Bank and Trust Company in the sum of ten
thousand dollars, and shall further find that he sold to the
Citizens Bank and Trust Company the entire stock of
goods for the sum of fourteen thousand dollars and that
this was a reasonable price therefor, and received therefor
a discharge of the debt of ten thousand dollars, and four
thousand dollars which was promptly applied to the pay-
ment of other debts, then the transaction would not be
fraudulent, even though J. M. Bush was largely indebted
to other people, the payment of whom was not provided
for, and the fact that the Citizens Bank and Trust Com-
pany knew at the time that J. M. Bush was insolvent
would not render the sale fraudulent or void.

12th. If the jury find from the evidence that part of the
purchase price of the stock of goods in question was used
to pay the creditors of J. M. Bush and that some of these
creditors were the sons of J. M. Bush, the fact of the re-
lationship would not make the sale fraudulent.

13th. The question of fraudulent intent is a question for
the jury to determine from all of the evidence in the case.

14th. The plaintiff asks the court to instruct the jury

that while the father is entitled to the earnings of his minor children, unless he consents to their using them, he may relinquish the right to such earnings, and that he has done so may be inferred from his conduct.

_15th._ If the jury should find from the evidence that J. C. Bush was a minor at the time he collected wages due him for work for his father, but that for years he had been permitted to collect and use his own wages, he occupies in law the same position of any other creditor, of J. M. Bush, and a payment of his wages to him would not be a reservation for the benefit of J. M. Bush."

The court gave the following instructions asked for by the defendant, but modified each instruction by adding thereto the following words: "Provided you further find that the bank knew of such purpose, or could have ascertained it by inquiry."

"(1.) The court charges you that if you believe from the evidence in this case that the plaintiff, the Citzens Bank and Trust Company, through John Trice, its president, purchased from J. M. Bush the property in controversy in this suit, and as a consideration for the sale thereof to it canceled an indebtedness due it by the said J. M. Bush amounting to the sum of ten thousand dollars and paid to him, or his representative, the further sum of four thousand dollars in cash, and at the time of canceling such indebtedness and making the said payment had no knowledge or information whether the property conveyed to it exceeded the value of fourteen thousand dollars, or not, and made no inquiry at that time as to the value of such property, and that the intention of J. M. Bush in making the said sale was to hinder, delay or defraud his creditors, you will find a verdict for the defendant.

(2). The court instructs you that if you believe from the evidence in this case that the plaintiff, the Citzens Bank and Trust' Company, purchased the property in controverry from J. M'. Bush, without knowledge of, and regardless of its value, you must find a verdict for the defendant, if you believe that it was the intention of the said J. M. Bush, by the sale of said property, to hinder, delay or defraud his creditors.

(3). The court charges you that upon its own evidence in this case the plaintiff was not a purchaser for value, without notice, and if you believe from the evidence that the conveyance to it of the property in controversy was made by J. M. Bush for the purpose of hindering, delaying or defrauding his creditors you must find a verdict for the defendant.

(4). The court charges you that if you believe from the evidence in this case that the property in controversy was conveyed to the Citizens Bank and Trust Company by J. M. Bush for the purpose of hindering, delaying or defrauding his creditors you must find a verdict for the defendant.

(5). If you believe from the evidence in this case that it was the intention of J. M. Bush in making the sale in controversy to the Citizens Bank and Trust Company, to secure for himself the sum of four thousand dollars in cash then paid by the Citizens Bank and Trust Company, or any part of the said sum, then the court charges you that as a matter of law the sale as to the said J. M. Bush was fraudulent.

(6). The court charges you that under the facts and circumstances of this case the plaintiff, the Citizens Bank and Trust Company is chargeable with knowledge of all facts that it could have ascertained in respect to the sale

of the property in controversy by the exercise of reasonable diligence.

(7). If you believe from the evidence in this case that it was the intention and purpose of J. M. Bush, in making the sale in controversy to the Citizens Bank and Trust Company, to reserve for the benefit of any member of his family to whom he was not *bona fide* indebted any part of the sum of four thousand dollars paid him in cash, then the court instructs you, as a matter of law, that the sale as to the said J. M. Bush was fraudulent.

(8). If you believe from the evidence in this case that during several months preceding the sale to the Citizens Bank and Trust Company J. M. Bush was concealing or secreting the moneys taken in in the course of business, or a substantial part thereof, preparatory to attempting a sale of substantially all the remaining property belonging to him as a part of a scheme to place his property, or any substantial part thereof, beyond the reach of his creditors, then the court instructs you, as a matter of law, that the sale as to the said J. M. Bush was fraudulent."

The defendant excepted to the refusal to give the charges as requested, and to the said modification of them by the court.

*Sparkman & Carter*, and *Macfarlane & Glen*, for Plaintiff in Error.

*R. Gunby* and *William Hunter*, for Defendant in Error.

PARKHILL, J.: *(after stating the facts)*. There are thirty-four assignments of error. The first one, question-

ing the sufficiency of the evidence to support the verdict, will be considered last.

The other errors assigned challenge the correctness of certain charges given by the court. Before proceeding to a discussion of these charges in detail, let us determine what principles of law must guide us in our consideration of the charges—what are the rules by which the charges must be measured. We will consider these principles of law as they affect:

1st. A voluntary purchaser, *one who is not a creditor.*

A purchase made by one not a creditor is fraudulent and void as against creditors even though the purchaser has paid an adequate consideration, where the seller has at the time a purpose or intent to defraud his creditors, or to hinder and delay them in the collection of their debts and the purchaser knew of such purpose, or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence would have led to the discovery of such fraudulent purpose of the seller and the buyer did not make such inquiry. If the purchaser has paid value and has not such knowledge, he is a bona fide purchaser and will be protected as such. Williams v. Finlayson, 49 Fla. 264, 38 South. Rep. 50; 14 Am. & Eng. Ency. Law 270.

2nd. Where the purchaser is also a creditor.

(a) Where the debt is the *sole* consideration.

A person who receives property from an insolvent debtor in payment of an *antecedent debt* occupies a more favored position than a *purchaser for a present consideration.* A preferential transfer of property cannot be declared fraudulent as to other creditors, although the debtor in making it intended to defeat their claims, and

the creditor had knowledge of such intention, if the preferred creditor did not actually participate in the debtor's fraudulent purpose. If the only purpose of the creditor is to secure his debt, and the *property is not worth materially more* than the debt, the transaction is not fraudulent. 20 Cyc. 274, and cases cited. Rosenheim v. Flanders, 114 Iowa 291, 86 N. W. Rep. 293 and cases cited; Sly v. Bell, 131 Iowa 184, 108 N. W. Rep. 227, and cases cited. And this is so, although the creditor knows that the debtor is insolvent. 20 Cyc. 475; 6 Ency. Ev. 114.

He is even protected in such case, although he knows the debtor is actuated solely by a desire to defraud his own creditors. 20 Cys. 475; Rosenheim v. Flanders, *supra;* Sly v. Bell, *supra.*

Such a creditor is protected even though he knows that the transfer is of all the debtor's property, that there are other creditors, and that the effect of the debtor's action will be to defeat them. 20 Cyc. 475; Carson v. Byers, 67 Iowa 606, 25 N. W. Rep. 826; Crawford v. Nolan, 70 Iowa 97, 30 N. W. Rep. 32; Rosenheim v. Flanders, *supra.*

But the creditor must act in good faith, for, if he takes the conveyance for the purpose of aiding in the fraud, it is void. Richards v. Schreiber, Concher & Westphal Co., 98 Iowa 422, 67 N. W. Rep. 569. Rosenheim v. Flanders, *supra.*

(b) Where the debt is only *part* of consideration.

If a creditor purchaser, in seeking to recover his debt, goes further and buys more than enough property to pay his debt, there being no necessity for his so doing in order to secure his claim, and pays partly with his debt and partly in cash, he combines the character of a volunteer purchaser with that of a creditor, and is to be treated merely as a purchaser, and the rules already given

as relating to a volunteer purchaser must be applied to him. If the creditor purchases more than enough property to pay his debt, although he pays a consideration for the remainder, the sale is void, if he has actual knowledge of the debtor's fraudulent intent, or knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of such fraudulent purpose of the seller. 20 Cyc. 479; 14 Am. & Eng. Ency. Law 298, and cases cited; Oppenheimer v. Guckenheimer, 39 Fla. 617, 23 South. Rep. 9; Walling v. Christian & Craft Grocery Co. 41 Fla. 479, 27 South. Rep. 46; Rosenheim v. Flanders, *supra,* and cases cited; Sly v. Bell, 131 Iowa 184, 108 N. W. Rep. 227, and cases cited.

A sale by an insolvent debtor of a larger amount of goods to one creditor than is necessary to pay the debt. is valid, if the creditor does not know, and has no good reason to suppose that the sale is made with intent to hinder and delay other creditors. Allen v. Carpenter, 66 Texas 139, 18 S. W. Rep. 347.

But knowledge of indebtedness or even of insolvency merely of the transferer standing by itself does not put the purchaser on inquiry. 20 Cyc. 484; Mathews v. Reinhart, 149 Ill. 635, text 644, 37 N. E. Rep. 85; Bump on Fraud Conv., Sec. 183; 14 Am. & Eng. Ency. Law 291.

But there is an exception to the rule that a creditor buying more than enough property to pay his debt, paying with his debt and partly in cash, becomes a volunteer purchaser, and that exception is this, that where, by agreement, the purchaser or seller *applies* the cash in payment of the *other indebtedness* of the seller, the sale being otherwise fair, the sale being bona fide and for fair valua-

tion, it will not be set aside. 20 Cyc. 479; Rosenheim v. Flanders, *supra;* Rankin v. Vandiver, 78 Ala. 562; Carter v. Coleman, 84 Ala. 256, 4 South. Rep. 151; Fargason v. Hall, 99 Ala. 209, 13 South. Rep. 302. And the rules which apply to a creditor purchaser, where the debt is the sole consideration, prevail likewise in this case.

The second assignment of error is, that the court erred in charging the jury in 5th subdivision of the charge as follows: "If a debtor in failing circumstances proposes to sell to one of his largest creditors practically all his property for a price in excess of what he owes him, and the creditor is informed, and has reason to believe that it is the purpose of the debtor to use the excess in the payment of his honest debts, even though not enough to pay all his creditors, the sale is not fraudulent as to the creditors who are not paid."

The objection urged here to this charge is, that "it states in effect that a sale of practically all his property by a debtor to a creditor for a price in excess of the debt is not fraudulent *as to other* creditors, irrespective of the debtor's intention to defraud, if the purchasing creditor i informed and has reason to believe the debtor's intention is to apply the excess to the payment of other creditors. In other words, the charge asserts that a fraudulent intention on the part of the debtor does not make the sale fraudulent, if the purchasing creditor has reason to believe the excess is to be used to pay some creditors." Preceding the 5th subdivision of the charge, against which this criticism is directed, the court charged the jury as follows: "3rd. That when a debtor in failing circumstances transfers to one of his creditors practically all of his property and in addition to his indebtedness receives an additional sum over and above what he owes either in notes or cash,

with the intent to appropriate the overplus to his own use and deprive his creditors of it, and the purchaser knows of such purpose, the sale is fraudulent." Again, in sub-division 2, the court instructs the jury as follows: "That when a transfer made by a debtor in failing circumstances to one of his creditors is made with intent to hinder, delay or defraud his other creditors, and the purchaser is aware of that intent, the transfer is fraudulent as to his other creditors." See also instructions given in subdivisions 4 6 and 7 of the general charge, and special charges for the plaintiff Nos. 2, 4, 6, 11. In determining the correctness of instructions and charges, they should be considered as a whole, and if as a whole they are free from error, an as-signment predicated on isolated paragraphs or portions, which standing alone might be misleading, must fall. Sea-board Air Line Railway v. Scarborough, decided at this term; Freiberg v. Johnson 71 Texas 558, 9 S. W. Rep. 455. As it was said by the Supreme Court of Texas, in the last cited case: "It cannot be reasonably expected that th' trial judge will, in every paragraph of a lengthy charge, announce all the principles of law applicable to every issue and phase of the case presented by the pleadings and evidence; nor will it be presumed in the absence of every thing to support such presumption, that the jury consid-ered any particular paragraph of the charge to the exclu-sion of all others." See also, on the objection made here other charges asked for by the plaintiff and given by the court, particularly special charge 6, given upon request of the plaintiff. The subdivision of the charge complained of under this assignment of error, considered and read with the portions of the charges just quoted, is not subject to the contention made here. There was no error here.

Again, it is objected that the charge is further erron-

eous in that it permits a creditor to take goods in excess of his debts and pay the debtor the balance." As we have already seen, a creditor is permitted to take goods in excess of his debt and pay the debtor the balance, if th creditor does not know that the sale is made with intent to hinder, delay and defraud other creditors, or does not know of such facts or circumstances as would induce an ordinarily prudent person to make inquiry, and which inquiry if made with reasonable diligence, would have led to the discovery of such fraudulent purpose of the seller, and the court so informed the jury in other sentences of the charge, especially in the 6th subdivision of the charge, which forms the third assignment of error.

This disposes of the objections made by counsel to this charge. It may be that this charge is erroneous for the reason that it does not require the purchaser to see that the money is applied to the payment of the seller's creditors, but, under the facts of this case and other charges by the court on this point, the giving of this charge is not reversible error. All the evidence shows that the sum of four thousand dollars in excess of the debt was actually paid to Mr. Simonton by Mr. Trice who was acting for the bank. Not one cent of this excess was paid to the seller of the goods. The excess was paid to Mr. Simonton under an agreement between the debtor, who sold the goods, and the purchasing creditor that this sum of four thousand dollars should be paid by Mr. Simonton to certain creditors of Bush, the selling debtor, and the evidence shows without contradiction that Simonton actually paid the excess of four thousand dollars to those creditors of Bush. The verdict of the jury was in accordance with the facts, and the jury was not misled by the part of the charge we are now considering. Prescott v. Johnson, 8

Fla. 391; Hooker v. Johnson, 10 Fla. 198; May's Executors v. Seymour, 17 Fla. 725.

The third assignment of error is, that the court erred in charging the jury in the 6th subdivision of the charge as follows: "If you find from the evidence in this case that Bush and Company were in failing circumstances, that they were practically insolvent, which fact was known to the bank, or which John Trice, the president of the bank, with whom the trade was made, ought to have known, that Bush and Company proposed to sell their goods to the bank, demanding four thousand dollars over, and above their indebtedness to the bank; that Bush and Company intended at the time to so dispose of the four thousand dallors that their creditors could not reach it, so that they could delay or hinder their creditors in the collection of their claims, that this fact was known to Mr. Trice, or by diligent inquiry he could have discovered it, then the same was fraudulent, and you should find for the defendant, provided there were such circumstances attending the transaction as to raise the suspicion of the bona fides of the transaction, in the mind of a reasonably prudent man, or to put him upon inquiry."

The objection is made that, according to the charge, "if the debtor and creditor knowingly assisted in the perpetration of a fraud on other creditors, the transaction is not to be judged by that fact, but by the abstract standard of what the circumstances would have indicated to a reasonably prudent man." The proviso should properly come just before the words, "then the sale was fraudulent." Read in this way, the latter part of the charge would read: *"that this fact was known to Mr. Trice,* or by diligent inquiry he could have discovered it, provided

there were such circumstances attending the transaction as to raise the suspicion of the bona fides of the transaction, in the mind of a reasonably prudent man, or to put him upon inquiry." This being the clear meaning of the charge, it did not confuse or mislead the jury, and is not erroneous, as leaving the jury to conclude that the transaction is to be judged solely by the constructive notice on the part of the purchaser.

This charge is not erroneous for the other reason urged, that it permits a creditor to take goods in excess of his debt, and pay the debtor the balance. As we have seen, a sale by an insolvent debtor of a larger amount of goods to one creditor, than is necessary to pay the debt, is valid, if the creditor has no actual or constructive knowledge that the sale is made with intent to defraud his creditors or to hinder and delay them in the collection of their debts.

The fourth assignment of error is based on the 7th charge given by the court, as follows: "If you find from the evidence that, at the time of the transaction, Bush and Company had no intention of hindering, delaying or defrauding their other creditors, but intended to apply the four thousand dollars to the payment of a part of their honest debts, even if not enough to pay all of them, the sale was not fraudulent, and you should find for the plaintiff." Of course, if Bush and Company had no intention of hindering, delaying or defrauding their other creditors, then the alienation of their goods would not be void, as to creditors, 20 Cyc. 461, and the giving of this charge was not error.

The fifth error assigned is based on the 8th charge given by the court as follows: "If you find from the evidence that, at the time of the sale, Mr. Trice was informed by

Bush and Company or, by their attorney, whom he knew, and in whose integrity and veracity he had confidence, that it was the purpose of Bush and Company to appropriate the four thousand dollars to the payment of their just debts, even though those debts may have been owing to members of the Bush family, and there was nothing in the surrounding circumstances to arouse the suspicion of an ordinarily prudent man, or to put him upon inquiry as to the purpose of Bush and Company, then the sale was not fraudulent, even though it may have been the secret intention of Bush, or of Bush and Company, to place the four thousand dollars beyond the reach of other creditors, and you should find for the plaintiff."

This charge is not erroneous because it disregards the distinction between means of knowledge and actual knowledge of the fraudulent intent of the seller. The court had fully charged the jury upon the effect of the actual knowledge of the purchaser of the fraudulent intent of the seller upon the validity of the sale. This charge is not subject to the objection that it singles out and emphasizes isolated fact favorable to the plaintiff.

The sixth assignment of error is based upon the 9th charge given by the court, as follows: "If you find from the evidence that the four thousand dollars, paid Bush and Company in excess of their indebtedness to the bank was actually appropriated to the payment of the just debts of Bush and Company, even if those debts were due to members of the Bush family, and even if a large number of Bush and Company's creditors went unpaid, the sale was not fraudulent, and you should find for the plaintiff." This charge is said to be erroneous because it "affirms that an insolvent can sell substantially all of his property to a creditor for a price in excess of the debt due

the latter, and if the excess is actually appropriated to the payment of debts, whether due relatives or not, the sale is not fraudulent, *irrespective of the intention of the parties,* even if a large number of other creditors go unpaid." As we have seen, in the exceptions to the rule noted above, what the charge states is permitted to be done, if the sale is otherwise fair. It is well settled, says the Supreme Court of Alabama, in Chipman v. Stern, 89 Ala. 207, 7 South. Rep. 409, "that an insolvent debtor may prefer one or more of his creditors to the exclusion of others, and that an absolute sale of the whole of his property, in payment of an antecedent bona fide debt at a reasonable price, not reserving to himself any benefit or trust by which he may be benefited, is valid, and will be sustained whatever may have been his intentions, and whatever notice the preferred creditors may have had of such intentions. Neither is the transaction rendered fraudulent by reason of an express stipulation that the purchasing creditor will pay debts due to others specified, and such debts are in fact paid."

"In a suit to set aside as fraudulent a sale by an insolvent merchant of his stock of goods, notes and amounts to certain of his creditors for the amount of his indebtedness to others, and an amount in cash, it appeared that the cash amount was the amount the merchant owed to certain other creditors for borrowed money, that he demanded the amount in order to pay such creditors, that the sale was made with the understanding that the amount should be so used, *and that it was so used*: Held, that a fraudulent intent could not be imputed to the purchasing creditors, in paying such amount as part of the purchase price of the goods." Fargason v. Hall, 99 Ala. 209, 13 South Rep. 302.

The seventh assignment of error is, that the .court erred in charging the jury as follows: "You are the sole judge of the weight and sufficiency of the evidence, and of the credibility of the witnesses, and as this is an at-tack by the attaching creditors of Bush and Company on the *bona fides* of the sale, the burden of proof is on the defendant to satisfy you by a fair preponderance of the testimony that the sale was fraudulent, and unless that has been done, your finding must be for the plaintiff." There was no error here. In this case it is admitted by all parties that the bank paid a fair value for the goods. It was agreed on the trial, that the goods sold were of the value of fourteen thousand dollars and the evidence shows conclusively that the bank paid fourteen thousand dollars for the goods. There are no circumstances in this case which would raise the legal presumption that the transaction was fraudulent. Where this is the case, the burden of proving by a preponderance of the evidence that the sale was fraudulent was on the sheriff, the plaintiff. Williams v. Finlayson, 49 Fla. 264, 38 South. Rep. 50. We will consider this instruction further in connection with the 8th, 13th, 17th and 18th instruction.

The 8th, 13th, 17th and 18th assignments of error have been argued and will be considered together. As to these assignments, it is contended that under the facts and circumstances of this case these instructions should not have been given to the jury and they were calculated to mislead the jury, that the question is presented by these instructions whether or not a sale made by an insolvent debtor to his creditor under the circumstances surrounding this sale is within the saving clause of section 1991 Rev. Stats. of 1892, as a conveyance made bona fide to one not having at the time any manner of notice or knowledge of the

fraud. It is contended that in law the transaction was fraudulent under the decisions of this court in Walling v. Christian & Craft Grocery Co., 41 Fla. 479, 27 South. Rep. 46, and Oppenheimer v. Guckenheimer, 39 Fla. 617, 23 South. Rep. 9, so that there was no questions of intent to submit to the jury. In the case of Oppenheimer v. Guckenheimer, *supra*, it is said, "that where a creditor, knowing that his debtor is insolvent, takes from him a conveyance of all, or substantially all, of his property, and more than is reasonably necessary to pay a debt due such creditor deducting his debt in part payment therefor, and for the residue of the purchasing price executes and delivers *to the debtor*, his promissory notes, payable at various future dates, mostly one year, such transaction is in law void *per se* against other existing creditors no matter what the real motives of the parties were, because such transaction necessarily hinders and delays such creditors in the collection of their debts."

In Walling v. Christian & Craft Grocery Co., *supra*, the court said on page 492, "it is stated in the answer that Ratcliffe bought the entire stock of goods from Mrs. Walling, and paid *her* cash one hundred and sixty dollars more than she owed him. She was at the time embarrassed with debts and threatened with suits by her creditors. We have condensed the answer in the statement given, but taken as an entirety, it is apparent that Ratcliffe knew when he purchased the stock of goods that Mrs. Walling was insolvent and that she was thus disposing of all her property in order that it might not be reached by pressing creditors. *Under such circumstances* he should not have bought more than was necessary for his own protection." The headnote of this case is as follows: "A creditor, knowing that his debtor is insolvent and engaged in disposing

of his property in order that it might not be reached by pressing creditors, cannot purchase more than is necessary to protect himself, of such debtor and *pay him the difference in cash."*

In the instant case, even if Trice knew of the insolvency of the debtor and that he was disposing of his property in order that it might not be reached by pressing creditors, he did not give *the debtor* long notes for the excess of the purchase price over and above the debt due him as was the case of Oppenheimer v. Guckenheimer, *supra,* and although he paid four thousand dollars in excess of his debt, yet Trice and his debtor agreed that this cash paid in excess should be applied to the payment of other debts of Bush & Co., *and this excess sum was in fact paid to Bush's creditors,* which distinguishes this case from Walling v. Christian & Craft Grocery Co., *supra,* and Oppenheimer v. Guckenheimer, *supra.*

In the case of Rankin & Co. v. Vandiver, 78 Ala. 562, the trial court charged the jury as follows: "If the jury believe from the evidence that Duke in good faith sold out his two stocks of goods to the claimants to pay their indebtedness against him, and also to get money to pay three certain debts that were pressing him; and that this purpose was known to the claimants at the time they bought, and that the money paid him by claimants was used by Duke in paying off said three debts; and that the price paid for said goods was fair and reasonable, than the claimants acquired a good title to said goods, even though they knew at the time that Duke was insolvent, and in failing circumstances and though they also knew that the known effect of said sale was to hinder or delay other creditors of said Duke." The Supreme Court of Alabama held that there was no error in giving this charge. The

court said: "The transaction is claimed to be fraudulent, as one made by the seller or debtor with intent to hinder, delay or defraud his creditors, he being at the time insolvent and in failing circumstances. It is not denied that the price or consideration paid for the goods was fair and adequate, nor that it was in fact paid. The only objection urged to vitiate the sale is, that the purchasers paid to the seller, as a part of the consideration, the sum of two thousand dollars *cash*, the remainder of the consideration only, or about three thousand dollars being the payment of an antecedent debt. No doubt can be entertained as to the proposition, that the transaction would have been entirely unassailable for fraud as an authorized preference of creditors by a failing debtor, but for the payment of a portion of the consideration in *money*. Our past decisions fully settle this. Hodges v. Coleman, 76 Ala. 103, text 120; Meyer v. Sulzbacher, 76 Ala. 120. It is manifest that the only sound reason upon which it can be urged that the payment of money or cash to the vendor would vitiate the sale must be, that it is a retention of a benefit in his favor. The conversion of a failing debtor's property into cash, which is more readily "shuffled out of sight" than property, is often a potent fact to prove that it was paid by the purchaser for the purpose of aiding him in executing a purpose to defraud. If such was this case, without more, we might hold that many of the charges requested by the appellants should have been given in the form requested. Lehman v. Kelly, 68 Ala. 192, text 200; Borland v. Mayo, 8 Ala. 104; Covanhovan v. Hart, 21 Penn. St. 495; Eskridge v. Abrahams, 61 Ala. 134; Bendict v. Renfro, 75 Ala. 121, S. C. 51 Am. Rep. 429. But the facts of this case are different from those of any one which has been heretofore presented to this court for decision.

It is shown that the vendor of the goods, the debtor, Duke, owed the sum of two thousand dollars to certain specified creditors, three in number, who were pressing him for payment of their demands; that this fact was made known to the vendees at the time of the sale, and that they expressly stipulated with the debtor that he was not to retain this money, but was to pay it over to these named creditors, whose claims were shown to have been honestly due. This payment is shown to have been faithfully made as was stipulated. If Duke, by way of preference had transferred the *goods* to the three other named creditors, jointly with the appellees, in payment of their debts, and these three purchasers had afterwards sold their interest in the goods to appellees for the sum of two thousand dollars in money, no one would say that any interest had been reserved, benefit secured, or secret trust created in Duke's favor. Yet the present case is obviously, in substance, precisely the same as that, saving only the circuity of the transaction. If one is fraudulent, the other must be. This mere indiscretion could not remove the taint of fraud, were it present; for, as has been forcibly said, the law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice and truth. Rogers v. Hadley, 32 L. J. Exch. 248. It is our opinion, that the payment of the money to the debtor by the appellees did not render the purchase fraudulent, in view of the fact that it was expressly agreed that it should be paid to the other *bona fide* creditors, and was so paid to them. There was no semblance of any locking up of the property from creditors, for the use of the debtor, nor one dollar's worth of benefit or profit retained by him. The creditors were no more hindered, defrauded or delayed by the disposition of this money, than by that of the goods. A sale

made with intent to make a lawful preference, under the facts in evidence, is not a fraudulent sale."

It is objected further by plaintiff in error that these instructions should not have been given for the reason that "this transaction, as disclosed by the evidence, being a sale of substantially all of an insolvent debtor's property, the consideration *pro tanto* being the cancellation of a debt, and, for the balance, the creation of a fund for the payment of other preferred creditors, is an assignment for the benefit of creditors and void, under section 2307 Revised Statutes of 1892," which reads as follows: "No assignment for the benefit of creditors shall be valid in this State, except the same shall be made in writing and shall provide for an equal distribution of all the assignor's real and personal property, except such as is exempted by law from forced sale, among the several creditors of the said assignor in equal proportion to their respective demands."

In considering this section of the Revised Statutes, this court, in the case of Armstrong, Cator & Co. v. Holland, 35 Fla. 160, text 166, 17 S. R. 366, said: "We do not hold that our assignment statute undertakes to deprive a debtor of the control and disposition of his property, if done in a proper way; but our view is that, *if a debtor has determined* upon *a general assignment* under the statute for the benefit of creditors, *and in pursuance of* that determination voluntarily mortgages his property to secure favored creditors, and then *in the execution of the formed design to avail himself of the benefits of the statute makes a general assignment,* it will draw to it, and, in legal contemplation, embrace all prior acts of the debtor having for their object the voluntary transfer and disposition of his estate; and, if preferences are shown to one creditor

over another, *under such circumstances* it will be fraudulent under the statute."

We have italicized the words in the above quotation to direct attention to the qualification therein clearly expressed throughout. In a well considered opinion by Mr. Justice Taylor, in the case of Wylly-Gabbett Company v. Williams, decided at the present term, this court quoted with approval the utterances of the Supreme Court of Illinois in the case of Walker v. Ross, 150 Ill. 50, 36 N. E. Rep. 986: "An absolute conveyance made directly to the creditor in payment, or any form of lien given as security for the payment of a *bona fide* debt, though having the effect to give the creditor a preference, is not an assignment for the benefit of creditors, within the meaning of the statute. Wherever such instruments have been held void under section 13 of the assignment act, it has been upon the ground that, having been made in contemplation of an assignment in trust afterward actually executed, they were deemed a part of it. The statute does not contemplate a constructive assignment. A debtor, solvent or insolvent, notwithstanding the statute relating to voluntary assignments, may lawfully transfer any part *or the whole of his property in payment,* or incumber it by mortgage, deed of trust in the nature of a mortgage, judgment confessed, or pledge, as security for the payment of such debts preferred. By selling or mortgaging his property directly to his creditors, the debtor exercises a clear, legal right. His right, by such means, to prefer such creditors to others, is not affected by the statute." See, also, other cases cited in Wylly-Gabbett Company v. Williams, *supra*.

Transfers made by a debtor directly to creditors, without the intervention of a trustee, are not assignments for

the benefit of creditors, unless, as we have seen, they were made in contemplation of an assignment in trust afterwards executed, when they are to be deemed a part of it. 3 Am. & Eng. Ency. Law (2nd ed.) 13; Walker v. Ross, *supra*. A sale has been generally distinguished from an assignment by the absence from it of the trust element which is essential to assignments. Thus, the Missouri court has said that, in the sale of property, there is a fixed price but no trust, while in an assignment there is a trust and no fixed value given to the property. Becker v. Rardin, 107 Mo. 111, 17 S. W. Rep. 892. In the case of Dana v. Stanfords, 10 Cal. 269, Mr. Justice FIELD, delivering the opinion of the court said: "From the very power which a man possesses over his own property, it follows that he can dispose of it in any manner he may see fit, which does not contravene the general policy of the law. That policy restricts the power of disposition, so as to prevent the withdrawal of the property from the claims of his creditors." To turn over the debtor's property to a creditor in payment of debts is not withdrawing the property from the claims of the creditors. Justice FIELD continues: "It is no part of such policy to inhibit its application to the payment of one debt rather than another. It would, indeed, be unreasonable to deny, on the one hand the right to give a preference by voluntary payment or security, and to allow on the other hand such preferences to be acquired by compulsory process of attachment or excution. A conveyance giving such preference is not fraudulent, though the debtor be insolvent, and the creditor be aware, at the time, that it will have the effect of defeating the collection of other debts. To avoid the conveyance, there must be a real design on the part of

the debtor to prevent the application of his property in whole or in part to the satisfaction of his debts."

Opposed to these views the plaintiff in error cites the cases of Kellog v. Richardson, 19 Fed. Rep. 70, Kerbs v. Ewing, 22 Fed. Rep. 693; Freund v. Yaegerman, 26 Fed. Rep. 812. These cases, as well as Dahlman v. Jacobs, 16 Fed. Rep. 614, Clapp v. Dittman, 21 Fed. Rep. 15, Perry v. Corby, 21 Fed. Rep. 737 and State v. Morse, 27 Fed. Rep. 261, were referred to, reviewed and disapproved in Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. Rep. 1013. See, also, May v. Tinney, 148 U. S. 60, 13 Sup. Ct. Rep. 491.

Counsel for plaintiff in error cite the case of White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. Rep. 309. That case, however, was based on Preston v. Spaulding, 120 Ill. 208, 10 N. E. Rep. 903, which only went to the extent of saying that "wherever such instruments have been held void under section 13, it has been upon the ground that, having been made in contemplation of an assignment in trust afterwards actually executed, they were to be deemed a part of it." In referring to White v. Cotzhausen, *supra,* and other cases, the Supreme Court of Illinois, in Walker v. Ross, 150 Ill. 50, text 58, 36 N. E. Rep. 986, said: "In the cases cited by counsel, Hide and Leather National Bank of Chicago v. Rehm, 126 Ill. 461, 18 N. E. Rep. 788, Hanford v. Prouty, 133 Ill. 339, 24 N. E. Rep. 565, and Hier v. Kaufman, 134 Ill. 215, 25 N. E. Rep. 517, the instruments in question were followed by actual assignments, and the language relied on must be considered as referring to such cases. White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. Rep. 309, also cited, was expressly based on Preston v. Spaulding, which was a like case. In Moore v. Meyer, 47 Fed. Rep. 99, this case was explained and the

Illinois cases were reviewed in an elaborate opinion by Judge ALLEN (United States Circuit Judge for the Southern District of Illinois) and it is held as in accordance with the construction of the statute by our Supreme Court, that such instruments do not of themselves, even in effect, constitute an assignment. Nor, when not made in view of an actual assignment folowing, can it be regarded as a fraudulent evasion of the statute, because the debtor, though intending to appropriate all of his property to the payment of his debts, is not bound to make an assignment. In so appropriating it by absolute conveyance or mortgage directly to the creditors therein named, not creating a trust, he exercises a clear, legal right, and may thus distribute it as he sees fit. His right by such means to prefer some creditors to others is not affected by the statute. Appellant Ross did not intend to make an assignment for the benefit of creditors, and never did make it, for the reason that he did not intend to make preferences, and knew he could not do so by such an instrument."

Counsel cite Wilks v. Walker, 22 S. C. 108, also. This case is referred to and distinguished in the later case of Verner v. McGhee, 26 S. C. 248, 2 S. E. Rep. 113, the third headnote reading: "Where a party in good faith, and for full value purchased the stock of goods of a merchant, who proved to be insolvent at the time, and the purchaser made payment in part with a debt due him by the seller, the transaction was not a fraudulent violation by the purchaser of the statutes of Elizabeth or the assignment act."

The case of First Nat. Bank of Chicago v. Trebein Co., 59 Ohio St. 316, 52 N. E. Rep. 834, is not in point, for, speaking of the facts in that case, the court said: "The transaction cannot be likened to a conveyance to a third

person for a valuable consideration, * * * considered in the light of the facts, it was no more than a conveyance from himself to himself."

Neither do we think the instant case falls within the case of Gashe v. Young, 51 Ohio St. 376, 38 N. E. Rep. 20, cited by counsel; but is like the case of Bagley & Co. v. Waters, 7 Ohio St. 359. In the last mentioned case Israel W. Waters, who bought the property from Asa B. Waters, who was greatly in debt, agreed to assume and pay off a number of the debts owing by Asa B. Waters. The court quoted from Dickson v. Rawson, 5 Ohio St. 218, as follows: "To bring the case within the operation of the statute, the conveyance must be in trust, and the person receiving the property thereby constituted a trustee for some one or more of the creditors of the debtor, to the exclusion of others. Whether it is so in trust, and the assignee or grantee such trustee, depends upon the question whether, by the terms of the instrument, or by necessary implication, he is liable to account to the preferred creditor for the property in his hands, and for the manner in which he disposes of it." In view of the fact, in the instant case, that Trice paid $4,000.00 in cash, over and above the $10,000.00 then due by Bush to Trice's bank, which sum of $4,000.00 was to be paid, and was in fact paid, to certain other creditors, we will quote the following from Bagley v. Waters, supra: "*Had the price of the property* been paid to the vendor, no one can doubt his legal right to have made such preference in its distribution."

In view of the principles already stated and the facts in the instant case, we are of the opinion that the transaction between Bush and Company and Trice, acting for the bank, was a sale of the goods and not an assignment for the benefit of creditors in contemplation of section 2307,

Revised Statutes of 1892. The goods were sold for the fixed price of $14,000, every cent of which was paid, ten thousand dollars being paid by the cancellation of a bona fide existing debt and $4,000.00 being paid in cash, it being understood that the latter sum would be paid to certain creditors who were entitled to liens upon the property and this sum was in fact paid to them. The debtor or vendor reserved no benefit to himself or interest in the property. There was no element of trust in this transaction. There was no design on the part of the debtor to prevent the application of the property to the satisfaction of his debts. The property was not *withdrawn* from the claims of creditors; it all went to the payment of creditors. Bush did not intend to make an assignment for the benefit of creditors and never did make it, for the reason that he did intend to make preferences.

The case of Stewart v. Mills County Nat. Bank, 76 Iowa 571, 41 N. W. Rep. 318, was very much like the case at bar. We quote from the opinion in that case: On the 20th day of July, 1887, A. J. Russell owed to the garnishee $10,331 for borrowed money, for which L. W. Russell was held as security. On that day L. W. Russell failed in business. His relations with A. J. Russell were such that the latter was led to believe that his creditors would press their claims as soon as the failure was known, and he decided to pay the garnishee and other 'home creditors,' so far as he could, before paying those who lived at a distance. An officer of the garnishee was sent for, and came to an office where A. J. Russell and others were found. An attempt was first made to have Russell secure the bank by means of a chattel mortgage, but he refused to execute one. After some discussion it was agreed that Russell should convey to the bank his stock of merchandise, some

other personal property, including notes and accounts, and some real estate; in consideration of which the bank was to cancel the indebtedness of Russell, which it held, and in addition pay him $232 in money. A conveyance was drawn in accordance with the agreement, and was delivered and recorded during the night. On the 22nd day of July, 1887, the bank was garnisheed in the actions of plaintiffs against A. J. Russell.

"It is contended by appellants that the conveyance of property to the garnishee was unlawful and void as to them, for the alleged reason that it was, in effect, a general assignment of all the property of the debtor for the benefit of but one of several creditors; that the intent of the debtor, in making the conveyance, was to hinder, delay and defraud the creditors of the debtor other than the garnishee, and that the latter accepted the conveyance with knowledge of that fact. The evidence shows without conflict that the conveyance was accepted by the garnishee in payment of a valid, subsisting indebtedness, and that the transfer was fully accomplished, and the evidence thereof duly recorded, before the garnishment was effected. It is true that the debtor designed to prefer the garnishee to other creditors, but knowledge of that fact did not affect the rights of the garnishee to secure payment of its claim, even though by so doing it prevented the collection of the claims of other creditors. Aulman v. Aulman, 71 Iowa 124, 32 N. W. Rep. 240. No general assignment was intended by Russell. He made an absolute conveyance of the property in payment of a just demand. It is true that the negotiations took place during the night, and that haste was displayed to secure the conveyance, and place it upon record, and that it was the design of

20—S C

both parties to the instrument to have it recorded, and the transaction fully closed, as soon as possible, to prevent other creditors from securing liens upon the property. But so far as the garnishee was concerned this was entirely proper. The failure of L. W. Russell was known to it only one or two hours before the transfer was made, and the officers of the garnishee would have been remiss in their duty had they failed to use all reasonable diligence to obtain priority in securing the claims of the bank. We do not discover any evidence of bad faith, or a desire to aid Russell in hindering, delaying or defrauding other creditors, on the part of the bank."

The 9th, 10th, 11th, 12th and 14th assignments of error have been argued and will be considered together. It is argued that these instructions are erroneous for the reasons given in a discussion of the assignments, immediately preceding. What has been said, therefore, will apply here.

In regard to the 14th assignment it is argued that the instruction numbered eight submits to the jury a question which the testimony did not warrant. The instruction is as follows: "A sale by a debtor in payment of and in discharge of his debt will be valid where the creditor obtains other property for which he pays cash, if such other property was not more than the debtor was entitled to retain exempt from his other creditors, and no other property was reserved by him as his exemption." This charge, though it contained a correct proposition of law in the abstract was not relevant to the facts of this case. It was not harmful to the plaintiff, however, as the evidence proved that Bush did not reserve as exempt any of the money he received, for the sale of the goods, and furnishes no ground for reversal. Lee v. Merrick, 8 Wis. 229; Mt. Olivet Cemetery Co. v. Shubert, 2 Head (Tenn.) 116.

As to the 18th assignment of error which is based upon 14th instruction given by the court at the request of the plaintiff, as follows: "That while the father is entitled to the earnings of his minor children, unless he consents to their using them, he may relinquish the right to such earnings, and that he has done so may be inferred from his conduct."

Counsel for plaintiff in error say that "perhaps the charge as it goes may be correct in the abstract, but there was no evidence in this case warranting the submission to the jury of the question of emancipation of the minor sons of Bush."

The testimony of A. J. Bush shows: A. J. Bush and J. C. Bush were sons of J. M. Bush, who sold the goods in question to the Citizens Bank and Trust Company in May 1898. A. J. Bush and J. C. Bush were working for their father in the store and had been working there for some time. A. J. Bush was older that J. C. Bush. J. C. Bush died about six months before the witness A. J. Bush testified, January 13, 1906. J. C. Bush was "about close to twenty-two years" when he died. From this it would seem that J. C. Bush was about fourteen years old when his father sold the stock of goods to Trice for the bank. A. J. Bush testified further that his brother J. C. Bush had been working for himself ever since he was eleven years old, and that J. C. Bush had been working for himself "a good many years, at least eight years," that J. C. Bush worked for Bush and Flatheur at Apalachicola when he was ten years old. A. J. Bush testified that he and his brother were working for Bush and Company before the sale of the goods to the bank, that his brother kept the books of the firm of T. M. Bush and Company, that his brother received ten dollars a month when he

first began to work for himself, he did not remember what salary his brother received in Tampa, that J. C. Bush "drew his own wages for himself and used them to suit himself," and had been doing so ever since he was eleven years old, he and his brother J. C. B. lived with their father, they did not pay board, they bought their own clothes. He was asked if he knew whether his brother paid any board to his father during the time he worked for him in Tampa, and answered that he did not know. A. J. Bush said sometimes he received seventy-five dollars a month from his father and his brother generally paid him his wages,—he was working in the store with his brother, and his brother was keeping the books.

In connection with this instruction we will consider the following instructions given by the court: "If the jury should find from the evidence that J. C. Bush was a minor at the time he collected wages due him for work from his father, but that for years he had been permitted to collect and use his own wages, he occupied in law the same position of any other creditor to J. M. Bush, and a payment of his wages to him would not be a reservation for the benefit of J. M. Bush." The objection urged to the last charge quoted above is that "no case can be found where a boy of his age, living with his father under the paternal roof, without paying board, has been held a 'creditor of the father," etc. No authorities are cited in support of this contention. Some courts hold that the minor child may claim and be entitled to his earnings and become emancipated, but the child must cease to be a member of the family,—the relative obligations of parent and child must cease. Godfrey v. Hays, 6 Ala. 501.

We believe the true and better doctrine to have been stated in Dierker v. Hess, 54 Mo. 246, text 250. In that

case the court said: "The doctrine contended for by appellants' counsel is, although supported by several authorities, peculiarly abhorent to my mind. It is not necessary that the father, in order to give his minor son the privilege of receiving the fruits of his own labor, should proclaim that fact from the house tops, or accompany it by some token or ceremonial, as open and as odious as that which formerly attended the manumission of a slave: nor is it necessary to accomplish that end, that the son should cease to be a member of his father's family; that the dearest domestic ties should be rudely sundered, and he driven like some alien and outcast from beneath the paternal roof. The fact that the father has thus relinquished his claims to the son's earnings, may be established either by direct evidence or be implied from circumstances; and, when such relinquishment has been *bona fide* effectuated, it does not lie in the power of some prowling creditor to wrest from the son the gains he has achieved by honest industry, under the specious and covetous pretext that the property belongs to the father."

The 25th and 26th assignments of error will be consideerd together.

The twenty-sixth assignment of error is, that the court erred in refusing written charge number four requested by defendant, as follows: "The court charges you that if you believe from the evidence in this case that the property in controversy was conveyed to the Citizens Bank and Trust Company by J. M. Bush for the purpose of hindering, delaying or defrauding his creditors, you must find a verdict for the defendant." The court refused to give this instruction and modified it by adding thereto the following: "Provided you further find that the bank participated in the fraud, or knew of the fraudulent purpose of the debtor, or

could have ascertained the same by inquiry." The giving of this modified charge forms the basis of the 25th assignment of error. The law is well settled that in order to render an alienation void as to creditors that it is not enough that the debtor convey to the creditor the property in question for the purpose of hindering, delaying or defrauding his creditors. If the transfer is for a valuable consideration, creditors cannot attack it because of the fraudulent intent of the grantor, unless the grantee participated in the fraud or had 'actual knowledge of such intent or had notice of facts calculated to put him upon inquiry and which would lead to a discovery of such intent. 20 Cyc. 465. It was perfectly proper for the court to so modify the erroneous requested charge as to give to the jury the law as it is. There was no error here.

The 27th and 28th assignments of error will be considered together.

The twenty-seventh assignment of error is, that the court erred in modifying the instruction as requested by the defendant in his written charge number *five.*

"If you believe from the evidence in this case that it was the intention of J. M. Bush in making the sale in controversy to the Citizens Bank and Trust Company, to secure for himself the sum of four thousand dollars in cash then paid by the Citizens Bank and Trust Company, or any part of the said sum, then the court charges you that as a matter of law the sale as to the said J. M. Bush was fraudulent." The 28th assignment is the refusal of the court to give the charge as requested. This charge is erroneous, in that it left out of consideration any participation in or knowledge, actual or constructive, on the part of the Citizens Bank and Trust Company of the fraudulent intent of J. M. Bush, and it was perfectly proper for the

court to refuse to give the charge as requested and to modify the same, as was done.

The 29th and 30th assignment will be considered together.

The twenty-ninth assignment of error is, that the court erred in modifying the instruction as requested by the defendant in his written charge number *six*:

"The court charges you that under the facts and circumstances of this case, the plaintiff, the Citizens Bank and Trust Company, is chargeable with knowledge of all facts that it could have ascertained in respect to the sale of the property in controversy by the exercise of reasonable diligence."

The court refused to give this charge but gave it with the following modification: "Provided you further find that the circumstances were such as to put the bank on inquiry." The refusal of the court to give the charge just as it was requested by the plaintiff forms the basis of the 30th assignment of error. The modification made by the court was perfectly proper and stated the law correctly. It is not the duty of the vendee to inquire into the motives or circumstances of his vendor unless he is in possession of such facts and circumstances as would put a prudent person on inquiry. The purchaser may presume that he is dealing with an honest man, and until some suspicious circumstances arise in the transaction, that is, something appears that is not reconcilable with ordinary business integrity, he is not bound to stop and inquire: 20 Cyc. 483. Unless the circumstances were such as to put the bank on inquiry, it was not required to stop and inquire. Unless this were the case the bank was not chargeable

with knowledge of all facts that it could have ascertained. There was no error here.

The 31st and 32nd assignments will be considered together.

The thirty-first assignment of error is, that the court erred in modifying the instruction as requested by the defendant in his written charge number *seven*:

"If you believe from the evidence in this case that it was the intention and purpose of J. M. Bush, in making the sale in controversy to the Citizens Bank and Trust Company, to reserve for the benefit of any member of his family to whom he was not *bona fide* indebted any part of the sum of our thousand dollars paid him in cash, then the court instructs you, as matter of law, that the sale as to the said J. M. Bush was fraudulent."

The court refused to give this charge as requested but gave it with the modification: "But not fraudulent as to the bank unless the bank knew or ought to have known of this purpose." The refusal to give the charge as requested is the 32nd assignment of error. The court did not err in refusing to give this charge. Neither did the court err in modifying the same. The question in this case was not simply whether the sale was fraudulent "as to the said J. M. Bush," but whether the sale by Bush to the bank was fraudulent as to other creditors. Therefore, as we have seen, in order to make the sale fraudulent as to creditors it was essential, not only that Bush intended to reserve for the benefit of any member of his family to whom he was not *bona fide* indebted some part of the four thousand dollars paid him in cash, but also that the bank knew or ought to have known of this purpose, as the modification of this charge expressed.

The thirty-third assignment of error is, that the court erred in modifying the instruction as requested by the defendant in his written charge number *eight*:

"If you believe from the evidence in this case that during several months preceding the sale to the Citizens Bank and Trust Company J. M. Bush was concealing or secreting the moneys taken in in the course of business, or a substantial part thereof, preparatory to attempting a sale of substantially all the remaining property belonging to him, and as part of a scheme to place his property, or any substantial part thereof, beyond the reach of his creditors, then the court instructs you, as a matter of law, that the sale as to the said J. M. Bush was fraudulent." The court refused to give the charge as written above, but modified it by adding: "But before you can find it fraudulent as to the bank, you must further believe that, at the time of the sale the bank knew, or should have known, of Mr. Bush's purpose." The refusal to give this charge was not error, because it left out of consideration the knowledge by the bank of the intention of Bush to place his property beyond the reach of his creditors. The modification was correct.

The first assignment of error is based upon the action of the court in denying the motion for a new trial. The grounds of this motion have already been disposed of by a discussion of the other assignments of error, except the ground that the verdict is contrary to the evidence. In support of this ground, counsel for plaintiff in error refer to and adopt the argument advanced under the 8th, 13th, 15th, 17th and 18th assignments of error, "which urge the proposition that as a matter of law, on the undisputed evidence there should have been a verdict for de-

fendant." This proposition has already been disposed of adversely to the plaintiff in error.

Finding no error, the judgment is affirmed.

TAYLOR and HOCKER, JJ., concur;

COCKRELL and WHITFIELD, JJ., dissent.

SHACKLEFORD, C. J., disqualified.